IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TONY CABBIL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case Number:2-05cv513C |
| ) | |
| STATE OF ALABAMA DEPARTMENT ) | |
| OF TRANSPORTATION AND JOE ) | |
| MCINNES, ITS DIRECTOR ) | |
| Defendants. ) | |

## AFFIDAVIT OF GARY ELLIOTT

Before me, the undersigned notary public in and for the State of Alabama at Large, this day personally appeared Gary Elliott, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Gary Elliott. I am currently employed with the Alabama Department of Transportation (ALDOT) in Tuscaloosa, Alabama. I am assigned to the Fifth Division and in December 2003 and early 2004, Tony Cabbil was "loaned" to me to assist with the Hugh Thomas Bridge painting project in Tuscaloosa, Alabama. Loaning an employee from one project is not uncommon within the Department. During my employment with ALDOT, I have been loaned to another project when additional assistance was required.

I instructed Chief Engineer Ken Edwards to train Mr. Cabbil as to the requirements of the project. Mr. Edwards instructed Mr. Cabbil, and when Mr. Cabbil had been trained, Mr. Cabbil was assigned the task of inspecting the contractor's work on the project. This inspection generally, required that Mr. Cabbil visually inspect the shot-blasting of the bridge structure to

insure that old paint had been completely removed to bare metal and then visually inspecting the application of primer paint and final painting to insure proper application. In order to properly inspect the work area the inspector must climb up into a containment area suspended underneath the work area in order to physically view the work in progress. Mr. Cabbil was responsible for inspecting this work and preparing a daily work report reflecting his findings.

On December 19, 2003, Mr. Cabbil was found to have left the job site without permission. It is my understanding that Mr. Cabbil has stated that he went home for lunch, became ill and fell asleep. Mr. Cabbil should have requested permission to stay home after lunch, if he was ill, or at least he should have called his supervisor(s) or the office to advise personnel what had happened to him. He did none of these things. He merely returned his truck to the office and went home. As a result of this work rule violation, Mr. Cabbil was issued a written reprimand on January 5, 2004. *See* Exhibit One

On February 19, 2004, Bridge Inspector Derrick Tilley informed me that he had found several areas of the bridge that had not been properly inspected and that the contractor had been allowed to paint over these areas. Mr. Cabbil was the inspector for the project and responsible for insuring that the contractor had properly shotblasted and cleaned the areas before moving on to the next phase of painting the areas. Ken Edwards advised me that Mr. Cabbil had been instructed on what was required of him in order to perform a proper inspection. Mr. Cabbil's daily reports reflected that he had inspected and passed on the work that was found to have been deficient. The contractor was made to go back and correct the affected areas, re-blasting and painting the areas. The estimated cost of this re-work was between $4,000 and $5,000. Fortunately the contractor did not submit for payment of the re-work, although he could have done so. Mr. Cabbil advised me that he had not gone up into the containment area in a week on

2

the area current being blasted and painted. Without physically going into the containment area to make a visual inspection, in my opinion, it is not possible to conduct a proper inspection. This matter was reported to my supervisor for any further action.

This the 8TH day of JUNE, 2006.

_____
Gary Elliott

Subscribed and sworn to before me this the 8th day of JUNE, 2006.

_____
Notary Public

My Commission expires 02/19/08

3



# ALABAMA
## Department of Transportation

FIFTH DIVISION, DISTRICT TWO
OFFICE OF DISTRICT ENGINEER
POST OFFICE BOX 70505
TUSCALOOSA, ALABAMA 35407
Telephone: (205) 553-7030
FAX: (205) 556-5933

BOB RILEY
GOVERNOR

JOE McINNES
TRANSPORTATION
DIRECTOR

January 5, 2004

# REPRIMAND

**TO:** Mr. Tony L. Cabbil
Engineer Assistant

**FROM:** Mr. Gary Elliott
Project Engineer

**RE:** Reprimand

**Reprimand:** Mr. Cabbil, on December 19, 2003, left the project limits and did not return without notifying the chief inspector (Mr. Ken Edwards-CE) or his supervisor (Mr. Gary Elliott-PE). Mr. Cabbil actions are violation of the following Employee Work Rules.

General Work Rules:

670-X-19.01(d) – Inattention to job.
670-X-19.01(f) – Leaving job station without permission.

**Correction:** Mr. Cabbil will, in the future, notify his chief inspector or project engineer before he leaves the office or project site.

**Next Step Taken:** If Mr. Cabbil continues along this same behavior, the next step that will be taken is suspension.

**Definitions:**

<u>Reprimand</u> – is a written document documenting the employee performance concerning work habits or poor work performance, and will be attached to the employee's Employee Performance Appraisal. In addition, one or more reprimands results in 7 points being deducted in the "Disciplinary Score" section.

<u>Suspension</u> – See attachment

EXHIBIT 1

_Tony L. Cabbil_
Tony L. Cabbil
Engineer Assistant

_Gary W. Elliott_
Gary Elliott
Project Engineer

_Lewis S. Rager_
Lewis S. Rager, Jr.
District Engineer

1.

## SUSPENSION

The third step of the ∶ciplinary procedure is suspension. This is a severe and extremely serious step in the employee's career in state government. It is important for the employee to realize this fact. The supervisor must contact the agency personnel office and legal staff regarding the recommendation for suspension. When proceeding with the suspension, the supervisor (and others as dictated by department policy) should hold a formal meeting with the employee. The discussion is to outline the continued offenses and desired behavior changes. The employee should receive due process concerning the meeting. Due process should involve a notice of intention of the meeting and a meaningful opportunity for the employee to respond. The employee is to be told the length of suspension and dates of suspension. The employee should be told the suspension is a time for the employee to consider the criticality of the continued offenses and to decide if he or she would like to continue employment in state government. The decision should be based upon whether the employee will change the undesirable behavior. Upon the employee's return, they should be required to give the supervisor an answer as to their decision regarding behavior change and employment with the department.

Project # 99-205-010-773-204

Date    December 19, 2003

When I, K Edwards left the jobsite at 11:25AM T. Cabbil was present. I returned to the jobsite at 12:35pm, at that time I did not see T. Cabbil. I left the jobsite at 3:05pm, I still had not made contact with T. Cabbil.

Kenneth R Edwards

*[signature]*

3.

## REQUEST FOR LEAVE APPROVAL

Date from   12-19-03             Time from   1:00 p.m.

Date to     12-19-03             Time to     4:00 p.m.

Reason _____

To be charged as follows:

Vacation: _____        Holiday Comp Time: _____        Other _____

Sick:   3 hrs            Regular Comp Time: _____

Signed: _Tony Cabbil_

Date Submitted   12-19-03

_____  _____
Date          APPROVAL

12/29/03 _Ann Elliott_                     Call-in   [ ]
Date     DISAPPROVED
                                          Unauthorized Leave Number  [X]
LEFT PROJECT WITHOUT
         REASON
PRIOR APPROVAL

4.

12/19/03

At 8:30 am Gary Elliott called to say Tony had not showed up on the project. I advised that he was not scheduled to be off.

Gary called back at 9:30 to say Tony called him and he was at the shop getting his truck looked at. I called Bobby Davidson to verify. He advised Tony left before lunch

At 1:20 pm Gary called to advise Tony had left for lunch @ 11:25 and had not yet returned.

At 3:30 I called Linus Rogers to advise that Tony had been missing all day. He advised he had just pulled into the parking lot.

5.