Rec'd. 12/18/03 SD

DEPARTMENT OF TRANSPORTATION

ALABA DEPARTMENT OF TRANSPORTA N

*Complaint Form*

| Name | Address |
|---|---|
| Tony L. Cabbil | 1110 Wakefield Dr. Tuscaloosa, Al. 35405 |

| SSN | Race/Sex | Division/Bureau | District/Section | Job Classification |
|---|---|---|---|---|
| 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 | Black Male | 5th | 2 | Engineer Assistant |

| Signature | Date Submitted |
|---|---|
| Tony L. Cabbil | 12-16-03 |

| Date (*HR Bureau use only*): | Docket # (HR Bureau use only): 905 |
|---|---|

If your complaint is not based on discrimination, please check here: None ___

If your complaint is based on discrimination, please check one of the following:

Age ___ Consent Decree Violation ___ Disability ___ National Origin ___

Race ✓ Religion ___ Retaliation ___ Sex/Gender ___

Area in Which You Were Affected (*You must check one*):

Compensation ___ Disciplinary Action ___ Hiring ___ Job Assignment/Duties ___

Retaliation ✓ Training ___ Transfer ___

Other (*explain*) ___

Date of Incident: See attached statement

Summary of Complaint (*including the name of the employee against whom this complaint is being filed*):

This complaint involves Donna Elliott Project Engineer, and Lewis Rager District Engineer. I had concerns that I discussed with Donna Elliott on two different occassions about a co-worker. I then took my concerns to Lewis Rager and I am not satisfied with the way my meeting with him went. See attached copies for more details.

Names of Witnesses:

Your Suggested Resolution: I would like to be treated fair and equal as my co-workers by my supervisor.

DEFENDANT'S EXHIBIT H

Please return to: (1) Your immediate Supervisor or
(2) Your Division EEO Representative or
(3) ALDOT Human Resources Bureau (Attention: Title 7 Coordinator)
1409 Coliseum Blvd. Montgomery, AL 36130

Revised 1/11/02

I had issues and concerns that I discussed with Donna Elliott on two separate occassions. The first being on July 8, 2003 involving Michael Smelley not having to sign tickets on material being delivered on project but just sit in his truck playing crossword puzzle, in my opinion Donna became defensive and started taking sides with Michael, she stated she was not going to argue with me. I replied I'm not going to argue with you either but you are my supervisor so when I have concerns who am I suppose to talk to.

On August 4, 2003 I had a conversation with Donna after talking to Michael earlier about him putting down hours that he was was not working, he replied I didn't mean to offend you Tony, I replied you didn't offend me but you need to stop talking about being such a christian because the bible says thou shall not steal, I told Michael that he was a hypocrite he became angry small talk continued for a short while between he and I conversation ended shortly. Michael and Donna Had a conversation out on the project shortly afterwards, Donna had a conversation about three hours later in her office with me. Donna seem to be angry during the conversation at one point she pointed her finger at me while she was talking, I told her you are not



H2

being professional. Donna stated that I was wrong for saying anything to Michael and I should have talked to her instead, I replied when I talked to you concerning Michael earlier you stated that you was not going to argue with me, she said that I was questioning Michael integrity the conversation soon end.

On October 21, 2003 I went to Donna about a comment a co-worker had made to her about me she replied she didn't know what I was talking about, I went to my co-worker and asked her did she say anything to donna about me she said yes. The co-worker was Nell Clemmons. The next day I was sent to Chilton County, after about two weeks I asked Donna could she alternate staff because things on the project in Moundville was slow, replied I did what I had to do.

On November 3, 2003 I had a meeting with Lewis Rager about how I felt as though Donna was prejudice and about my evaluation from the previous year compared to Michael Smelley, he asked me to give him some time to investigate the allegation about Donna because that was a serious allegation.

On November 26, 2003 I met with Lewis Rager again, he stated that he could not find in his investigation nothing to show that Donna was prejudice, I asked him did he talk to people of

[illegible], no response from him, he then began talking abou: my evaluation, I asked him again in a different way Did you talk to any black employees while doing your investigation? he replied No, So then how can you justify that Donna is not prejudice if you only talked to white employees.

I mentioned to Lewis Rager while I was traveling to Chilton County I had no way of communicating (No Southern Linc, No radio) Nothing his response was that there was a shortage of both, I also had mentioned the same thing to Donna and mentioned to her that there were employees there in the office that had Southern Linc phones that could have been borrowed because they were right there in the office Nothing happened.

I'm sorry this letter was not typed but I don't have a type writer.

Thanks

Tony L. Cobbil

Engineer Assistant




ALABAMA DEPARTMENT OF TRANSPORTATION

*Initial Response Form*




| Docket Number | Name of Complainant |
|---|---|
| 905 | Tony Cabbil |

**Date of Initial Response**

January 12, 2004

| Name and Job Title of Responding Supervisor | Signature |
|---|---|
| L. Dee Rowe, Division Engineer | L. Dee Rowe |

**Initial Response To The Above-Referenced Complaint:**

See Attached Initial Response and Investigation.

**Proposed Resolution:**

See attached Proposed Resolution.

**Complainant's Response To Proposed Resolution (*You must check one*):**

Accept ___ Reject ✓

Signature Tony L. Cabbil Date 1-12-04

**Please return to:** ALDOT Human Resources Bureau
**Attention: Title 7 Coordinator**
1409 Coliseum Blvd.
Montgomery, AL 36130

Revised 1/11/02



H5

**Attachment to Initial Response Form**

**Reply to Grievance of Tony Cabbil**

Complaint received: ____________________

**Initial Response:** January 12, 2004

**MAIN ISSUES:**

A. Another employee, Mr. Michael Smelley, was allowed to do things on the job that Mr. Cabbil was not allowed to do. The specific items were:

1) Work crossword puzzles to include photocopying the puzzles on the project copiers.

2) Sit in the truck on the project without offering to give others a break from standing out in the heat.

3) claiming time worked through lunch when, in fact, he left the project, bought pizza, returned to the project, and ate the pizza in the truck.

B. Donna Elliott had behaviors that indicated that she is prejudiced. Specifically:

1) She allowed Mr. Smelley, a white male, to do items listed in "A"

2) She discussed Mr. Cabbil's work with Ms. Nell Clements, but then when asked by Mr. Cabbil if she had done so, she denied it

3) She has graded Mr. Smelley 30 on his performance appraisal, but graded two black employees 20 during approximately the same time frame.

4) She gets defensive when Mr. Cabbil voices concerns.

C. Lewis Rager did not investigate Mr. Cabbil's concerns, in that he did not talk to any black employees.





H6

D. Lack of communication devices.

**INVESTIGATION:**

A.1 Many employees work crossword puzzles while on the job, usually on "slow" days when they are waiting for the contractor. Mr. Cabbil, himself, was listed by one individual as having been seen working crossword puzzles, as well as Mr. Smelley. Mr. Smelley had been seen making photocopies of crossword puzzles, as were other project employees.

A.2 On the day in questions, July 8, 2003, when Mr. Smelley was sitting in the truck while Mr. Cabbill and Ms. Bostic were working in the sun, there were three ALDOT employees on the project, and they each had a truck. Mr. Cabbil is assigned truck number 10503, Ms. Bostic 10131, and Mr. Smelley 10133. Ms. Bostic is the only project inspector that lists any contractor activity on the day in question. Mr. Cabbil had ample opportunities to be in his truck, out of the heat, as did Mr. Smelley.

A.3 It is not uncommon for a project inspector to work through the lunch hour when the contractor is active on the project without a lunch break. If there is a lull in the contractor's activity the employee can leave for a short period of time to get his lunch and eat as he can, while waiting for the contractor and still be considered "on the clock." Mr. Smelley is reported to have left the project, but Mr. Cabbil had the same opportunity. The Buddy's that Mr. Smelley went to is actually on the project route. Mr. Smelley was acting at the direction of the Project Engineer when he wrote in his time to include the lunch hour.

B.1 See A.1, A.2, and A.3.

B.2 Ms. Elliott had already dismissed Ms. Clements comments regarding Mr. Cabbil's work when he brought it up to her, therefore, she was not thinking that there had been a conversation.

B.3 Mr. Cabbil saw Mr. Smelley's performance appraisal due to Mr. Smelley's carelessness of leaving it out for others to see. One employee possessing knowledge of another's appraisal is not encouraged. Ms. Elliott had discussed all the employees performance

over the time period before she came to the project office, with the previous Project Engineer. Together with her own observations, she assessed each employees performance without regard to race, and certainly without a comparison as how one performs against another.

B.4 It appears that Ms. Elliott may have responded to Mr. Cabbil's concerns in a reactionary manner on occasion.

C. Mr. Rager had never received any complaints about Ms. Elliott showing racial partiality and he asked if she had received complaints from black employees. She had not. That is as far as he went with his investigation.

I did investigate further and was told by one black employee that she thought Ms. Elliott was prejudiced toward blacks because when she and another black employee came to work in April as new hires they were told there were no trucks, but then a white male came to work in October and he was assigned a truck. This particular issue was not one that Mr. Cabbil brought up, however, it was indicative to black employees of racial partiality. The white male that came to work in October was a consultant who came to work on this project because he had the experience to perform density tests and had the nuclear density certification. He was given a truck in order to haul the approximately 50-pound nuclear density gauge from location to location. The two blacks hired in April do not have certifications as of yet and do not need heavy equipment to perform the duties which are assigned to them at this time.

The same employee also discussed the Performance Appraisal issue, expressed her dislike of Ms. Elliott referring to her as "girl" and to the black men as "boy" and she mentioned that when she complained to Ms. Elliott about a white female employee's behavior toward her, that Ms. Elliott dismissed it as the white female employee being under a lot of stress.

D. Not every vehicle has a radio installed and not every employee is assigned a Southern Linc radio. Usually, at least one person on the job has one form of communication or another. Communication devices are provided for the benefit of the Department. The Division has a policy that allows employees who feel they need additional communication due to illness of either the employee or a family member, that states they may carry a personal cell phone after receiving written permission to do so from the Division Engineer.

**PROPOSED RESOLUTION:**

As was suggested by Mr. Cabbil, he, and all other employees, regardless of race or gender will be treated fairly by the supervisor.

In addition, employees will be watched more carefully with regard to the time and place crossword puzzles are worked, not allowing the activity when the employee is "on the clock." Alternative activities related to improving the employee's job performance will be suggested. All employees will be reminded that personal use of state equipment is strictly prohibited.

All project employees will be strongly discouraged from spending extended periods of time in the project trucks. This is both non-productive and presents a poor image of the Department to the public.

Employees, upon receiving their performance appraisal, will be instructed to keep their performance appraisal private, as it is a personal matter.

Ms. Elliott will be registered for Diversity training, if she has not already taken it. She will also be counseled on communication issues in order to avoid further misunderstandings.

L. Dee Rowe, Division Engineer




# ALABAMA DEPARTMENT OF TRANSPORTATION

1409 Coliseum Boulevard, Montgomery, Alabama 36130-3050




*Bob Riley*
*Governor*

*Joe McInnes*
*Transportation Director*

January 30, 2004

Mr. Tony L. Cabbil
1110 Wakefield Drive
Tuscaloosa, AL 35405

RE: Docket #REY-905

Dear Mr. Cabbil:

Enclosed is a copy of the investigative report concerning the complaint you filed with the Bureau of Human Resources. As we discussed, the information contained in the report will be reviewed during the Step II resolution meeting. That meeting has been scheduled for February 18 at 11:00 a.m. Please feel free to ~~call me at 334-242-6879 if you have any questions. Otherwise, I~~ will see you on February 18 at the Fifth Division Office in Tuscaloosa for the resolution meeting.

Sincerely,

Sandi Dietz

Sandi Dietz
Title VII Coordinator

Enclosure

cc: ~~Mr. David-Long~~ Daniels
Mr. Kell Simon
Mr. Michael Cooper
Mr. Jim Ippolito
Ms. L. Dee Rowe

Cabbil v. ALDOT 0061
Docs Prod by Pltf



H10

January 28, 2004

**COMPLAINANT:** Tony L. Cabbil

**DOCKET NUMBER:** REY 905

CONFIDENTIAL

INVESTIGATIVE DETERMINATION

The following determination is hereby issued on the merits of the charge as is hereinbelow stated. The complainant alleged as follows:

A. That, "I had concerns that I discussed with [my supervisor,] Donna Elliott, on two different [occasions] about a co-worker. I then took my concerns to Lewis Rager and I am not satisfied with the way my meeting with him went."

B. That, his complaint is based upon race discrimination.

In view of the aforementioned charge, an investigation, including an examination of pertinent official records and interviews with appropriate personnel, was conducted by the Bureau of Human Resources of the Alabama Department of Transportation. As a result of said investigation, the following facts were ascertained:

A. Mr. Cabbil (Engineering Assistant) stated he spoke with Donna Elliott (Project Engineer) on August 4, 2003 about his coworker, Michael Smelley (Engineering Assistant). Specifically, he complained that Mr. Smelley

   1. Would not sign tickets for materials delivered to the project on July 8, 2003 and several other times. Mr. Cabbil stated that Mr. Smelley sat in his truck and did crossword puzzles.

   2. Falsified the number of hours he actually worked on August 4, 2003.

   Mr. Cabbil stated that he spoke to Ms. Elliott again on October 21 to inquire whether a coworker, Nell Clemmons, said something to Ms. Elliott about him. Ms. Elliott responded that she did not know what he was talking about.

   Mr. Cabbil indicated he was offended by Ms. Elliott's communicaton with him when he brought his complaints to her (i.e., she pointed her finger at him as she was speaking and sounded angry and/or defensive). Mr. Cabbil was also upset



abbil v. ALDOT 0062
ocs Prod by Pltf
H11

CONFIDENTIAL

because he believed Ms. Elliott did not take any corrective actions after he voiced his complaints.

Mr. Cabbil stated he spoke with Mr. Rager on November 3, 2003 to tell him he felt Ms. Elliott was prejudiced, and to talk about his performance appraisal (compared to Mr. Smelley's performance appraisal). On November 26, Mr. Rager told Mr. Cabbil that he did not find any evidence that Ms. Elliott was prejudiced. However, Mr. Cabbil was dissatisfied with Mr. Rager's response, because Mr. Rager had not spoken with any black employees.

* * * * * * * *

According to departmental records, there were three project inspectors, Mr. Cabbil, Mr. Smelley, and Ms. Bostic, who worked on the project on July 8, 2003. Ms. Bostic was the only inspector who listed contractor activity (e.g. signing tickets submitted by contractors) that day. All three inspectors had individual trucks at the work site. Mr. Cabbil stated that he assisted Ms. Bostic with the tickets that day. He also stated that when he is in his truck on a project site, he does not work crossword puzzles. Instead, he reads work-related material.

During her investigation of this complaint, Dee Rowe (Division Engineer) learned that apparently many employees worked crossword puzzles during slow periods (i.e., waiting for contractors). As a result, Ms. Rowe stated she will take measures to monitor the activities of project employees and to also suggest alternative, job-related activities as opposed to the crossword puzzles.

Ms. Rowe did not find that Mr. Smelley had falsified his time on August 4, 2003. Apparently Ms. Elliott approved Mr. Smelley's indicating he had worked through his lunch hour, and Mr. Cabbil could have done the same. Ms. Rowe stated that, unless a contractor is working through the lunch hour, it is not necessary for ALDOT employees to do so. Therefore, she will also take measures to prevent this in the future.

According to Ms. Elliott, Ms. Clemmons complained to her that Mr. Cabbil would not work after 4:00 p.m. Ms. Elliott did not have a problem with Mr. Cabbil's work hours, therefore, did not discuss this complaint with him. She dismissed the complaint as a personality conflict between Ms. Clemmons and Mr. Cabbil and considered the situation to be resolved. As a result, a day or two later when Mr.

CONFIDENTIAL

Cabbil asked her if Ms. Clemmons had said anything to her about him (giving no specifics), Ms. Elliott did not realize that Mr. Cabbil was referring to this past situation. Therefore, she told him she did not know what he was talking about.

Ms. Rowe stated that she has observed Ms. Elliott's pointing and gesturing when she speaks to people, including Ms. Rowe. Therefore, Ms. Elliott most likely communicated with Mr. Cabbil in her usual manner. However, Ms. Elliott has recently been counseled on her communication style, specifically gestures which may offend some people.

According to Mr. Rager, Mr. Cabbil did tell him on November 3 that he felt Ms. Elliott was prejudiced. However, Mr. Cabbil did not provide any examples of discriminatory treatment, and apparently Mr. Rager did not ask Mr. Cabbil for any. Mr. Rager stated that neither he nor Ms. Elliott had ever received any complaints or information indicating Ms. Elliott's behavior was discriminatory. Therefore, he did not pursue Mr. Cabbil's claim any further. According to Ms. Rowe, she has since counseled with Mr. Rager, and instructed him to be more inquisitive or seek assistance with claims of this nature in the future.

On November 18, 2003 Mr. Cabbil received a performance appraisal score of 20 (Meets Standards). According to Ms. Elliott, she rated Mr. Cabbil's performance based on her own observations of his performance combined with information she had received from Mr. Cabbil's previous supervisor during the rating period. Ms. Elliott denied that Mr. Cabbil's race or another employee's job performance were considerations or factors in Mr. Cabbil's performance appraisal score. Likewise, ten months earlier (i.e., January 21, 2003) Mr. Smelley received a score of 30, without regard to his race or another employee's performance.

B. Mr. Cabbil indicated his complaint was based on race discrimination. He said he felt this way, but could not think of any time he had been treated differently than white Engineering Assistants.

**SUMMARY:**

This complaint appears to have resulted from poor communication skills, assumptions not based on facts, misunderstandings, and personality conflicts. However, it does appear that Ms. Rowe has been made aware of several problems, and that she has

H13

CONFIDENTIAL

taken, or will take, appropriate corrective action.

There was no evidence which indicated that Mr. Cabbil had been treated differently because of his race, or that he had suffered in any term or condition of his employment.

CONFIDENTIAL

In view of the investigation, its premises, and the aforementioned findings as a result thereof, the following is offered:

> In her initial response to this complaint, Ms. Rowe listed a number of reasonable, appropriate suggestions to resolve the issues of this complaint. Therefore, it is recommended that these suggestions be implemented. (See **Attachment 1**).

The complainant is advised by copy of this document that personnel of the Alabama Department of Transportation will refrain from perpetrating any retaliatory actions against him for coming forward with the aforestated complaint.

Respectfully submitted,

Sandra M. Dietz
Sandra M. Dietz, Investigator

1/28/04
January 28, 2004

____ Accepts

____ Rejects

APPROVED:
30 JAN 04

______________________________
Tony Cabbil, Complainant

______________________________
February 18, 2004

**Documentation Attached:**

Attachment 1: Proposed Resolution, dated 1/12/04.

cc: Mr. David R. Long-Daniels
Mr. Kell Simon
Mr. Michael Cooper
Mr. Jim Ippolito
Ms. L. Dee Rowe
Mr. Tony Cabbil

**PROPOSED RESOLUTION:**

As was suggested by Mr. Cabbil, he, and all other employees, regardless of race or gender will be treated fairly by the supervisor.

In addition, employees will be watched more carefully with regard to the time and place crossword puzzles are worked, not allowing the activity when the employee is "on the clock." Alternative activities related to improving the employee's job performance will be suggested. All employees will be reminded that personal use of state equipment is strictly prohibited.

All project employees will be strongly discouraged from spending extended periods of time in the project trucks. This is both non-productive and presents a poor image of the Department to the public.

Employees, upon receiving their performance appraisal, will be instructed to keep their performance appraisal private, as it is a personal matter.

Ms. Elliott will be registered for Diversity training, if she has not already taken it. She will also be counseled on communication issues in order to avoid further misunderstandings.

L. Dee Rowe, Division Engineer

CONFIDENTIAL