

# ALABAMA
## Department of Transportation
**FIFTH DIVISION**
**OFFICE OF THE DIVISION ENGINEER**
POST OFFICE BOX 70070
TUSCALOOSA, ALABAMA 35407
Telephone: (205) 553-7030
FAX: (205) 556-0900

DEPARTMENT OF TRANSPORTATION
**Bob Riley**
GOVERNOR

Joe McInnes
TRANSPORTATION
DIRECTOR

March 15, 2004

## M E M O R A N D U M

TO:         Ms. L Dee Rowe
            Division Engineer
            5th Division

FROM:       Nicky L. Calhoun
            Assistant Engineer – Construction

SUBJECT:    Tony L. Cabbil
            Engineer Assistant
            District Two

PLAINTIFF'S
EXHIBIT

21

Attached are documents from the supervisors supporting data concerning Mr. Tony Cabbil. The District Engineer, District Two has recommended termination of Mr. Cabbil for the following violations:
1) Inattention to job.
2) Failure to perform job properly.
3) Falsification of records.

Based on the documentation transmitted herewith, I am adding a fourth violation:
4) 670X-19-01(f) – Leaving job station without permission and/or 670-X-19-.02(i) – Leaving before the end of the shift/walking off the job.

According to Section 670-X-19-.02 of the Rules of the State Personnel Board, violations #3 and #4, "may result in suspension or discharge on the first offense."

Mr. Cabbil is obviously not keeping records accurately. His work and records have to be constantly checked and verified because we are not able to rely upon his "completed work."

The above indicated violations are reached from one series of incidences while working with Mr. Gary Elliott, a seasoned ALDOT project engineer.

However, further investigation has led me into determining a pattern of violations while working with Mr. Elliott and other project engineers. These are:

Memorandum
March 15, 2004
Page 2

Chapter 670-X-19-.01(1)
   b) Absenteeism - ...a pattern of absences, or excessive absences.
   g) Disruptive conduct of any sort
   a) Poor housekeeping

Chapter 670-X-19-.01(2)
   a) Insubordination
   e) Use of abusive or threatening language.

Mr. Cabbil has an attitude that he is being picked on or singled out. In my opinion, this causes him to retaliate by questioning his supervisors' authority, his untimely habit of taking time off after becoming aware of his next task or work location, not cooperating with his co-workers, and his intimidating actions toward work and personnel including one occurrence of personal hygiene.

Due to Mr. Cabbil's work record, I do not trust his inspection. Due to Mr. Cabbil's threatening attitude, his co-workers do not want to work around him. Due to the pattern exhibited by Mr. Cabbil towards regulations I do not forsee him taking constructive criticism. Progressive discipline has been applied to no avail.

I recommend termination of Mr. Cabbil as soon as possible. In order to prevent any personal retaliation or damage to ALDOT data or equipment, I request Mr. Cabbil be placed on mandatory leave (paid or unpaid) until his pretermination hearing and termination dates are over.

I believe this action is in the best interests of ALDOT.

NLC:bgm

Attachments

CHAPTER 670-X-19
EMPLOYEE WORK RULES

TABLE OF CONTENTS

670-X-19-.01   General Work Rules
670-X-19-.02   Prohibition of Political Activities

670-X-19-.01   General Work Rules.   In addition to any special
rules issued by the various appointing authorities for the
guidance of their employees, the following standard general
work rules shall apply to all classified employees:

(1)  Violations that normally result in disciplinary actions
of increasing severity:

(a)  Violations of safety rules.

(b)  Absenteeism - Unexcused absence, unreported absence,
a pattern of absences, or excessive absences.

(c)  Tardiness - Not on the job ready to work at the
beginning of the shift.

(d)  Inattention to job - Doing anything distracting while
on the job.

(e)  Failure to perform job properly.

(f)  Leaving job station without permission.

(g)  Disruptive conduct of any sort.

(h)  Abuse of equipment.

(i)  Unauthorized operation of vehicles, machinery, or
equipment.

(j)  Participation in unauthorized activity or solicitations
on work premises.

(k)  Poor housekeeping.

(l)  Unauthorized use of telephones.

(m)  Unauthorized use of bulletin boards.

(n)  Violation of specific department rules.

(4)  More serious violations that may result in suspension or discharge on the first offense, considering work record and length of service:

(a)  Violations of safety rules which endanger life or property.

(b)  Insubordination – Failure to follow an order; dis-obedience; failure to submit to authority as shown by demeanor or words, with the one exception of not following an order which the employee has good reason to believe is unsafe or illegal.

(c)  Theft or unauthorized possession of company property.

(d)  Fighting.

(e)  Use of abusive or threatening language.

(f)  Falsification of records – Application for Employment, time card, doctor's excuse, etc.

(g)  Possession or use of alcohol, narcotics, or dangerous weapons.

(h)  Sleeping on the job.

(i)  Leaving before the end of the shift/walking off the job.

(j)  Serious violation of any other department rule.

(k)  Job abandonment which consists of three days of unexcused, unreported absence.

                              Amended 5/23/85
                              Effective 6/27/85

(3)  The listing of violations above is not meant to be all inclusive and does not imply that discipline may not be imposed for other sufficient reasons.  (Statutory Authority: 36-26-9, Code of Alabama 1975.)

670-X-19-.02  Prohibition of Political Activities.

(1)  No person shall be appointed or promoted to or demoted or dismissed from any position in the classified service, or in any way favored or discriminated against with respect to employment in the classified service because of his political or religious opinions or affiliations.

(2)  No person shall seek or attempt to use any political endorsement in connection with any appointment to a position in the classified service.

(3)  No person shall use or promise to use, directly, or indirectly, any official authority or influence whether possessed or anticipated, to secure or attempt to secure, for any person an appointment or advantage in appointment to a position in the classified service, or an increase in pay



# ALABAMA
# Department of Transportation

FIFTH DIVISION, DISTRICT TWO
OFFICE OF DISTRICT ENGINEER
POST OFFICE BOX 70505
TUSCALOOSA, ALABAMA 35407
Telephone: (205) 553-7030
FAX: (205) 556-5933

**DEPARTMENT OF TRANSPORTATION**

BOB RILEY
GOVERNOR

JOE McINNES
TRANSPORTATION
DIRECTOR

March 4, 2004

Ms. L. Dee Rowe
Division Engineer
Alabama Department of Transportation
P.O. Box 70070
Tuscaloosa, AL 35407

Attention: Mr. Nicky Calhoun
            Division Construction Engineer

RE: Termination of Mr. Tony L. Cabbil (EA)

Dear Ms. Rowe:

We are recommending termination of Mr. Tony L. Cabbil – EA, presently working in construction with Mr. Gary Elliott – Project Engineer, for violation of ALDOT Employee Work Rules.

Violations of ALDOT Employee Work Rules are as follows:

- 670-X-19-.01 (1-d) Inattention to job
- 670-X-19-.01 (1-e) Failure to perform job properly

Mr. Cabbil's inattention to the job and failure to perform his job properly, from January 15-27, 2004, has resulted in P & H Stucco & Construction Inc., prime contractor on (Project # 99-505-010-773-204) to rework and re-sand/paint areas that Mr. Cabbil did not inspect according to ALDOT Standard Specification, Section 521. Documentation, dated February 20, 2004, from the Fifth Division Bridge Inspector, Mr. Derek Tilley, on the areas that were missed are as follows: Structure # 13-63-195.012, Bin # 10773; Span 22 – Some thin and missed spots at vertical stiffeners, diaphragms and at bottom flange of sidewalk I-beam at right side; Bent 23 – Almost all steel still old green color; Span 23 & 24 -- Numerous spots that primer is very thin or not primed (locations are mainly at vertical stiffeners, diaphragms and outside of sidewalk I-beam); Bent 24 – Some vertical stiffeners and bearing assemblies missed with green paint still showing and also steel shot has been primed left over around some bearings. When notified by Mr. Tilley of these inefficiencies, Mr. Edwards and Mr. Tilley re-inspected and confirmed the concerned areas.

NOTE: Mr. Cabbil was properly trained by Mr. Kenneth Edwards – CE, project inspector, under Mr. Gary Elliott – PE, and is monitored by his supervisor.

- 670-X-19-.02 (2-f) Falsification of records

Mr. Cabbil falsified records by reported on his Inspector's Daily Report that P&H Stucco & Construction Inc. had completed each sequence of construction before continuing to the next sequence. With the documentation from the Division Bridge Inspector and the re-check by Mr. Edwards, confirming the above mentioned deficiencies, Mr. Cabbil did not inspect each phase before allowing the contractor to continue.

Due to Mr. Cabbil inattention to the job, failure to perform his job properly, and falsification of records allowing the contractor to continue without informing them of deficiencies in their work, the approximate cost to ALDOT having the contractor to come back to re-sand/paint may be $5,000.00.

If you have questions or need further information, please contact this office.

Sincerely,

Lewis S. Rager, Jr.
District Engineer

Attachments:
cc: Ms. Pat Lynn

## STRUCTURE DEFICIENCIES

DATE 2/20/04

STRUCTURE NO. 13-63-195.012          BIN 10773

Areas of concern @ Hugh Thomas paint project.

Span 22 - Some thin & Missed spots @ vertical stiffers,
diaphrams & @ bottom Flange of sidewalk I-beam @ Rt side

Bent 23 - Almost all steel @ it still Green (Not touched)

Span 23 & 24 - Numerous spots that primer is very thin or not
primed @ all. Locations are mainly @ vertical stiffeners, diaphrams
& outside of sidewalk I-beams.

Bent 24 - Some vertical stiffeners & bearing assemblys' Missed
with green paint still showing : Also steel shot has been primed
over around some bearings.


Spans 20 & 21 are examples of good blast & primer coat.
In some other areas that are not complete seem to be
getting a good almost white blast but still missing numerous
spots with primer coat.


_Daniel Tilly_

Form BC-101

## INSPECTOR'S DAILY REPORT

Project No. 99-505-010-723-204    Day & Date Friday February 20 2004

Weather Partly Cloudy    Temperature: High 60    Low 41

Work Day _____    Time Work Started _____    Stopped _____    Hours Worked _____

Contractor's Forces:   Supt. _____    Foreman 1

Operators _____    Laborers:   Skilled 4    Unskilled _____    Others _____

Engineering Personnel: K Edwards (8)

### Contractor's Equipment On Project

| Number & Type | Operating | Not Oper. | Reason Not Operating |
|---|---|---|---|
| 2 - Pickup Trucks | 2 | | |
| 3 - Compressors | 1 | 2 | Not Needed |
| 1 - Vacuum | 1 | | |
| 1 - Dust Collector | 1 | | |
| 1 - Recycler | 1 | 1 | Not Needed |
| 1 - Mobile Scaffie | 1 | | |
| 1 - Paint Truck | | 1 | Not Needed |
| | | | |
| | | | |
| | | | |
| | | | |

### DETAILS OF DAILY OPERATIONS

P&H Stucco & Construction in

5th Division Bridge Crew began inspection of

bridge on Feb 17 2004. Areas of concern were

found by bridge crew inspector Derek Tilley.

On this date Feb 20 2004 Derek Tilley and

I, Kenneth Edwards re-inspected the concerned

areas previously found between Feb 17 and Feb 19.

I verified the concerned areas to be in

spans# 23 #24 #25 & #25A NBL & SBL

Feb 25, 2004

On Feb 23 2004 I was instructed by Lewis Rager, District Engineer, to document the training of Tony Cabbil.

I, Kenneth R Edwards, began training Tony Cabbil on the inspection of SP-10 near white blasting as of Dec 12 2003. The training began at Span #22 NBL & SBL.

Tony Cabbil began blasting inspection on January 13 2004. I, Kenneth R Edwards, continued to point out concerned areas during Tony Cabbil's inspection.

Kenneth R Edwards CE
Kenneth R Edwards CE

Friday, February 20, 2004

Re: Lack of inspection on Hugh Thomas Bridge project

Yesterday Derrik Tilley called me on the radio and told me he had done some inspection behind the bridge painters on this project. He said there was many areas our inspector had let them paint over unsand blasted areas and over very dirty places on the beams. (Steel grit being left laying on beams.) Tony Cobbil is the inspector on this project. He was shown how to inspect the beams by Ken Edwards who trained him. Ken told me that a lot of the areas that Derrik had found, he had told Tony to be sure they were cleaned before they were painted but were not. The large section they are working in now, Tony told me he had not been up in the containment system in over a week. I told him he needed to be up inspecting the beams every day. The contractor has been made to go back and re-sand and re-paint these areas. This is an estimated cost to the contractor of four to five thousand dollars.

Gary Elliott
Project Engineer

Form BC-101

### INSPECTOR'S DAILY REPORT

Project No. 97-305-010-773-204 _____ Day & Date Thursday January 15

Weather Partly cloudy _____ Temperature: High 54° _____ Low 45°

Work Day yes _____ Time Work Started 7am ___ Stopped 4pm __ Hours Worked 8

Contractor's Forces: Supt. 1 _____ Foreman 1

Operators _____ Laborers: Skilled 2 _____ Unskilled _____ Others 2 Insp.

Engineering Personnel: Tony Cabbil (8hr.) R Edwards (8)

---

### Contractor's Equipment On Project

| Number & Type | Operating | Not Oper. | Reason Not Operating |
|---|---|---|---|
| 2 Pickup Trucks | 2 | | |
| 1 Mobile Scaffle | 1 | | |
| 2 Air Compressors | 1 | 1 | Not Needed |
| 1 Dust Collector | | | |
| 1 Vacuum | 1 | | |
| 1 Recycler | | 1 | Not Needed |
| 1 Paint Truck | | 1 | Not Needed |
| 1 Forklift | 1 | | |
| | | | |
| | | | |
| | | | |

### DETAILS OF DAILY OPERATIONS

P & H Const. Co. Inc.

Contractor putting up containment in Span # 23, # 23A, # 24

Contractor cleaning up in Span # 25, # 25A, # 26

Contractor Sandblasting in Span # 23 SBK

Form BC-101

**INSPECTOR'S DAILY REPORT**

Project No. 99-205-010-773-204 _____ Day & Date Friday January 16 2004

Weather Fair _____ Temperature: High 59 _____ Low 36°

Work Day _____ Time Work Started 7:00Am Stopped 4:30PM Hours Worked 9 1/2

Contractor's Forces: Supt. _____ Foreman 1

Operators _____ Laborers: Skilled 2 _____ Unskilled 2 _____ Others _____

Engineering Personnel: K Edwards (8) _____

## Contractor's Equipment On Project

| Number & Type | Operating | Not Oper. | Reason Not Operating |
|---|---|---|---|
| 2 - Pickups | 2 | | |
| 1 - Mobile Scaffle | 1 | | |
| 2 - Air Compressors | 1 | 1 | Not Needed |
| 1 - Dust Collector | 1 | | |
| 1 - Vacuum | | | |
| 1 - Recycler | | | |
| 1 - Paint Truck | 1 | | |
| | | | |
| | | | |
| | | | |

## DETAILS OF DAILY OPERATIONS

P & H Stucco & Construction Inc.

Contractor Blasting @ Span # 23 NBL & Span # 23 SBL & 23 ASB

Contractor Painting @ Span # 23 NBL & Span # 73 SBL & 23 ASB
(1st Coat)       (1st Coat)      (1st Coat)

Steel Temp - 55°

Rel. Humidity - 60%

Dew Point - 47°

Amb Temp (Air) - 58°

Presso Film - 3.4 mils

Time 1:00 Pm

Form BC-101

## INSPECTOR'S DAILY REPORT

Project No. 10-505-010-773-804 _____ Day & Date Tuesday January 20, 2004

Weather Clear _____ Temperature: High 45° ___ Low 27°

Work Day yes _____ Time Work Started 7 pm ___ Stopped 4 pm ___ Hours Worked 8 hr

Contractor's Forces: Supt. 1 _____ Foreman 1 _____

Operators _____ Laborers: Skilled 2 _____ Unskilled _____ Others 3 on Site

Engineering Personnel: Tony Cobbil - (8 hrs)

### Contractor's Equipment On Project

| Number & Type | Operating | Not Oper. | Reason Not Operating |
|---|---|---|---|
| 2 Pickup Trucks | 2 | | |
| 1 Mobile Scaffle | 1 | | |
| 2 Compressors | 1 | 1 | Not Needed |
| 1 Vacuum | 1 | | |
| 1 Recycler | 1 | | |
| 1 Paint Truck | | 1 | Not Needed |
| 1 Dust Collector | 1 | | |
| | | | |
| | | | |
| | | | |

### DETAILS OF DAILY OPERATIONS

P & H Const. Co. Inc.

Contractor Sandblasting Span # 23 NBR

Contractor Sandblasting and printing 1st Coat in Span # 23A

NBR and SBR 2 1st 23 NBR and SBR Completed

Air Temp 40° -

Humidity 52 %

Dew Point 26°

Temp of Steel 40°

Presso film : 4.5 mils

Depression 6.0

Form BC-101

**INSPECTOR'S DAILY REPORT**

Project No. 97-05-010  173-204  Day & Date Wednesday January 21, 2004

Weather Partly cloudy  Temperature:  High 50°  Low 24°

Work Day yes  Time Work Started 7 AM  Stopped 4 pm  Hours Worked 8

Contractor's Forces:  Supl. 1  Foreman 1

Operators _____  Laborers:  Skilled 1  Unskilled _____  Others 3 Sandblast

Engineering Personnel: Tony Cabbil (8 hrs.)

### Contractor's Equipment On Project

| Number & Type | Operating | Not Oper. | Reason Not Operating |
|---|---|---|---|
| 2 Pickup Trucks | 2 | | |
| 1 Mobile Scaffle | 1 | | |
| 2 Compressors | 1 | | |
| 1 Vacuum | 1 | | |
| 1 Recycler | 1 | | |
| 1 Dust Collector | 1 | | |
| 1 Paint truck | | 1 | Not Needed |
| | | | |
| | | | |
| | | | |

### DETAILS OF DAILY OPERATIONS

P E H Const. Co. Inc.

Contractor cleaning up from under Spans #23 and #23A

Contractor closed Road at 9:30 A.m. Barricades on both

Sides of bridge.

Contractor moved containment to Span #24

Form BC-101

**INSPECTOR'S DAILY REPORT**

Project No. _____ Day & Date _Thursday January_

Weather _Clear_ _____ Temperature: High _55°_ _____ Low _26_

Work Day _1-5_ _____ Time Work Started _7am_ _____ Stopped _4pm_ _____ Hours Worked _8_

Contractor's Forces: Supt. _1_ _____ Foreman _1_

Operators _____ Laborers: Skilled _1_ _____ Unskilled _____ Others _3 Sandblast_

Engineering Personnel: _Tony Abbot (8 hrs)    K. Edwards (8 hrs)_

| Number & Type | Operating | Not Oper. | Reason Not Operating |
|---|---|---|---|
| 2 Pickup Trucks | 2 | | |
| 1 Mobile Baffle | 1 | | |
| 2 Compressors | 1 | 1 | Not Needed |
| 1 Recycler | 1 | | |
| 1 Vacuum | | 1 | Not Needed |
| 1 Dust Collector | 1 | | |
| 1 Paint Truck | | 1 | Not Needed |
| | | | |
| | | | |
| | | | |
| | | | |

Contractor's Equipment On Project

**DETAILS OF DAILY OPERATIONS**

P&H Const. Co. Inc

- Contractor began sandblasting in Span #24 SBR

Form BC-101

**INSPECTOR'S DAILY REPORT**

Project No. _99-05 013-773-204_ _____ Day & Date _Friday January 23, 2004_

Weather _clear_ _____ Temperature: High _49°_ _____ Low _29°_

Work Day _yes_ _____ Time Work Started _7 Am_ _____ Stopped _4 pm_ _____ Hours Worked _8_

Contractor's Forces: Supl. _1_ _____ Foreman _1_

Operators _____ Laborers: Skilled _1 bad_ _____ Unskilled _____ Others _3 Sandblas-_

Engineering Personnel: _Troy Cobbil (8 hrs.)_

**Contractor's Equipment On Project**

| Number & Type | Operating | Not Oper. | Reason Not Operating |
|---|---|---|---|
| 2 Pickup Trucks | 2 | | |
| 1 Mobile Scaffle | 1 | | |
| 2 Compressors | 1 | 1 | Not Needed |
| 1 Recycler | 1 | | |
| 1 Vacuum | 1 | | |
| 1 Dust Collector | 1 | | |
| 1 Paint truck | | 1 | Not Needed |
| | | | |
| | | | |

**DETAILS OF DAILY OPERATIONS**

PEA Const. Co. Inc

Contractor continuing to sandblast in Span #24 SER and

began sandblasting Span #24 NBR

Form BC-101

**INSPECTOR'S DAILY REPORT**

Project No. 77-05-010-773-264    Day & Date _Saturday January 24 2004_

Weather _Cloudy_   Temperature:   High _60°_   Low _36_

Work Day _yes_   Time Work Started _7A_   Stopped _4pm_   Hours Worked _8_

Contractor's Forces: Supt. _1_    Foreman _1_

Operators _____ Laborers: Skilled _1_   Unskilled _____ Others _Painter_

Engineering Personnel: _Tony Cabbil (8 hrs.)_

**Contractor's Equipment On Project**

| Number & Type | Operating | Not Oper. | Reason Not Operating |
|---|---|---|---|
| 2 Pickup Trucks | 2 | | |
| 1 Mobile Scaffle | 1 | | |
| 2 Compressors | | | |
| 1 Dust Collector | 1 | | |
| 1 Vacuum | 1 | | |
| 1 Recycler | | 1 | Not Needed |
| 1 Paint truck | | 1 | Not Needed |

**DETAILS OF DAILY OPERATIONS**

P&H Const. Co.

Contractor blowing SBR of Span #24

Contractor painting SBR of Span #24 1st coat also painted about half of the NBR Span #24

Air Temp 46°

Humidity 58%

Dew Point 32°

Steel Temp. 44°

Presso film 4.5 mils

Depression 6.0

Time: 8:45 Am

Form BC-101

### INSPECTOR'S DAILY REPORT

Project No. 99-205-010-773-204          Day & Date Monday January 26, 2004

Weather Partly cloudy          Temperature:   High 68°          Low 54°

Work Day yes          Time Work Started 7 Am          Stopped 4 pm          Hours Worked 8

Contractor's Forces:   Supt. 1          Foreman

Operators _____ Laborers:   Skilled 1          Unskilled _____          Others 3 painters/sand

Engineering Personnel: Tony Cabbil (8hrs.) K. Edwards (9)hrs

### Contractor's Equipment On Project

| Number & Type | Operating | Not Oper. | Reason Not Operating |
|---|---|---|---|
| 2 Pickup Trucks | 2 | | |
| 2 Compressors | 2 | | |
| 1 Mobile Scaffles | 1 | | |
| 1 DustCollector | 1 | | |
| 1 Vacuum | 1 | | |
| 1 Recycler | 1 | | |
| 1 Paint truck | | 1 | Not Needed |
| | | | |
| | | | |
| | | | |

### DETAILS OF DAILY OPERATIONS

PEH Const. Co.

Contractor Sandblasting the remainding half of

Span # 24 NBR Contractor painted remainding half of Span # 24 N:
1st Coat

Air Temp 60°

Humidity 68%

Dew point 49°

Steel Temp 59°

Depression 6.0

Presso film 4.0

Time: 12:45 p.m

Tony Cabbil

Form BC-101

**INSPECTOR'S DAILY REPORT**

Project No. 99-205-010-773-204 ___ Day & Date Tuesday January 27, 200(

Weather Pirtly cloudy ___ Temperature: High 42° ___ Low 34°

Work Day ___ Time Work Started 7am ___ Stopped 4pm ___ Hours Worked 8

Contractor's Forces: Supt. 1 ___ Foreman 1

Operators ___ Laborers: Skilled ___ Unskilled ___ Others ___

Engineering Personnel: Tony Cabbil (8 hrs.) K. Edwards (8 hrs.)

**Contractor's Equipment On Project**

| Number & Type | Operating | Not Oper. | Reason Not Operating |
|---|---|---|---|
| 2 Pickup Trucks | 2 | | |
| 2 Compressors | 1 | 1 | Not Needed |
| 1 Mobile Scaffle | 1 | | |
| 1 Vacuum | | 1 | Not Needed |
| 1 Dust Collector | | 1 | Not Needed |
| 1 Recycler | | 1 | Not Needed |
| 1 Paint truck | | 1 | Not Needed |
| | | | |
| | | | |
| | | | |

**DETAILS OF DAILY OPERATIONS**

P&H Const. Co.

Contractor blowing down beams in Span #24 NBR and SBR

Removing containment from same above area.

Contractor Open the road at 10:35 Am

Contractor put Canvas in Span #19 NBR and SBR

Covering chain link fence.

Anita Box    3-15-04

Bathroom Incident — 3-09-04

I arrived to work this morning @ Quarter till 7:00. I was heading to the restroom and met Tony Cabbil coming from the direction I was going. As I got to the ladies room I heard the toilet running where someone had just flushed it. (I was the only female here @ this time) As I turned on the light I saw a stream of urine on one side of the toilet seat from front to back. Ken Edwards was at the microwave and I told him to look at the mess. I asked him who had been in there and he said Tony. He said he (Tony) had been using the ladies room all the time. He also said that he told Tony he needed to go to the men's room on the other side and stay out of there. But he keeps on going in there any way. I had to clean it up and disenfect.

Incident on Friday @ 3:00 pm on 3/12/04
Tony had came in and was talking to Gary. I heard Gary tell him that he would not have to work the next day (Saturday). As he went out the front door he said "I widdin gore work tammare...."

outside. I got up to see who he was talking to and there was no one out there.

Every morning I make it a point to go to everyone's office and say hello and ask how they are. When I speak to Tony he just grunts & He looks at me like he's mad.

March 15 2004

This letter is in reguards to Tony Cabbil's weekend work habbits. I believe that Tony misunderstands the requirements of an inspector, when it pertains to weekends. I've explained to him that sometimes weekend work is mandatory. I've explained that it is not up to the inspector whether or not work is performed on the weekends, but that it is left up to the contractor. I, a Civil Engineer, have to feel in when ever he desides that he doesn't want to work weekends, especially when work falls on back to back weekends.

K-- RelS CE
Kenneth R Edwards

To: Nicky Calhoun, Construction Engineer

Re: Tony Cobbill, E.A.

This memo is in reference to Mr. Tony Cobbill's demeanor regarding fellow employees. He does not get along with any employees in this office. He is very short with his answers and very argumentative. He acts like he is angry about something every time anyone is around him. After being asked not to use the ladies restroom in the office, he constantly uses it and when he leaves it is very nasty and he does not clean it up. On one occasion last week, he went in and left urine all over the floor and toilet seat and Anita Bay went in later and found the mess. She asked Ken Edwards who had been in the bathroom and he told her it was Tony.

Doug Elliott, P.E.
3-15-04

Friday, February 13, 2004

Re: Tony Cabbil (Refusal to work when required)

On this date, Ken Edwards called me and said the contractors on the project Tony is working on is going to be working Saturday and Monday (16th President day Holiday). I told Ken to tell Tony Cabbil he needed to work. He told Tony and Tony refused to work both days. He said he had something he had to do. The last Holiday, in January, he said the same thing and did not work. I instructed Ken to tell him again we needed him to work both days. He told Ken he couldn't and did not think it was fair to make him work both days. Ken told him the last holiday he worked Saturday and the holiday for Tony.

I then went and told Tony I needed him to work Saturday and the Holiday. He said he could not work but I told him unless it was an emergency, he was required to work if needed. He finally said he could work. I told him if it rained Saturday, I would give him a minimum of 4 hours for coming out and waiting with the contractor to check on the painting status.

George W. Elliott

Tony Cabbil
December 8, 2003

Mr. Hugh Blanton and myself met with Tony Cabbil this date
to advise that he had reached eight call-ins.

I advised him that one was due to drop off December 16,
2003, so we were going to count this as seven.  Mr. Cabbil
got loud and began asking why he hadn't been told sooner.
I advised that he got a copy of his leave slips as they
occurred and if he wanted to see his file he could, but he
refused.

He then began questioning me on why Mr. Blanton was in
the office.  I told him that Mr. Blanton was one of his
supervisors and not a co-worker.  He felt like it was an
invasion of his privacy.

I advised that I had submitted his name to EAP and that he
would be getting notified by Mr. Jeremiah Taylor.

I also advised him that after reading his EA description
questionnaire that I noted he was not happy with things
around here.  I advised him that he needed to go see Mr.
Willis Reynolds, EEO Officer.  He said he would.  As Mr.
Cabbil left the office he said he was going to see Willis
Reynolds as if it were a threat to me.  I told Mr. Cabbil I
would be happy for him to go see him, Mr. Cabbil advised
me that I wouldn't be.

Donna Elliott

Tony Cabbil

December 2, 2003

On Tuesday, November 25, 2003, Mr. Cabbil was assigned to Project ACSTPAA-0201(509) to pick up tickets for crushed aggregate material that was placed for the shoulders. Eddie McCrory was off ½ day, Michael Smelley was on project MGF-0076(509). Mr. Cabbil did not do a DWR this date. He had the opportunity on 11/26/03 but did not. He was off on Monday 12/1/03 and in Chilton County 12/2/03.

This action shows lack of responsibility. Mr. Cabbil is in full knowledge that a DWR must be done daily for each project. Another employee will have to do his work.

Donna Elliott

Tony Cabbil
November 26, 2003

At 9:00 I received a call from Mr. Rager asking to meet in his office this morning.  I was there before 9:30.  He discussed Mr. Cabbil's meeting with him earlier that morning.  During this time Mr. Rager radioed Mr. Mickey Coley concerning whether or not Mr. Cabbil would be needed in Chilton County, he advised yes.

After this meeting I telephoned Mr. Cabbil to advise him that he would need to be in Chilton Co. Monday morning.  Mr. Cabbil advised me that he had just put a leave slip on my desk to take comp time off Monday.  I asked Mr. Cabbil if it could be postponed, and he advised no, that it was vitally important for him to be off Monday.  I then advised him to contact Mr. Coley.

I feel that this is in retaliation of having to go.

Donna Elliott

Tony Cabbil
November 25, 2003

I advised Mr. Cabbil this date that he should report to this office in the morning (11/25/03) instead of going to Chilton County to work.  He advised me that he felt that I should rotate personnel, insinuating that someone else should be doing some traveling.

I advised him that this was the decision that I had made.

Donna Elliott

Tony Cabbil
November 24, 2003

I went out on project MGF-0076(500) at approximately 1:10 pm, RaCon had a motor grader on site and was blading crushed aggregate. I stopped to check on Mr. Cabbil, he began asking me questions about Hwy. 69 project, what was going on etc. I advised they were placing shoulder material. He said that he'd rather be working down there than sitting up here doing nothing.

I advised that I couldn't have all my employees lumped together in one spot, there wasn't much work down there and there isn't much here.

I felt at the time Mr. Cabbil was questioning my authority.

Donna Elliott

Tony Cabbil
November 18, 2003

I attempted to review Mr. Cabbil's grade sheet with him this date. He refused to sign it saying that he did not agree with the score I gave him. He said I gave him the same score the last time I graded him, with the excuse that I didn't know him well or how he works. Which is true, I said that.

However, no improvement was shown throughout this year.

After speaking with Mr. Rager later, he advised me with a letter from Mr. Ron Green about the requirement of signatures.

I later spoke with Mr. Cabbil advising him, giving him a copy of the letter, that he needed to sign it and included comments, if he didn't agree. Which he did.

Tony Cabbil
November 17, 2003

Mr. Cabbil came by the office this morning on his way to
Chilton Co. to sign paperwork.  In a hateful tone he voiced
his opinion about how it was not worth his while to drive all
the way to Chilton Co. for only $7.50 a day.

Friday, November 14, 2003

I spoke with Lewis Rager about the accusations that Tony Cabbil made against me.

- He thinks I'm prejudice, that I treat him like a child
- That I handle black employees different than white
- That I down graded him from 30 to 20
- That he is the only one picking up tickets
- That there is tension among black/whites
- He feels I don't treat as a man, but a black
- He claims ill health; blood issues, high blood

In my defense I advised Lewis that if I did treat him different it was better than anyone else, just to avoid these type accusations.  Mr. Cabbil is very short tempered, hard to get along with from a supervisory and employee position.  I have not graded him down, his grade has remained the same.  Everybody on the project has collected tickets, there are very few jobs I can assign Mr. Cabbil and get them done correctly.  I am aware of a blood problems that he has, however, I am not aware that his blood pressure was a problem, I thought it was under control by medication.

Mr. Cabbil is able to complete very few tasks assigned to him without constant assistance from Eddie McCrory.  Our Sitemanager program has been in place since September 2002, and Mr. Cabbil still cannot operate it with out help.  Directions are on display for him and he has a hand written set that Mr. McCrory made for him.

Donna Elliott
11/17/03

Tony Cabbil
10/24/03

October 16th, 17th, and 20th I had Tony assigned to project
ASCTPAA-0201(509) to oversee the placement of pavement
edgedrain because I had Michael on project MGF-0076(500)
and Eddie was off sick.

On 10/24/03 it was brought to my attention that while
overseeing this work no measurement of pavement
edgedrain was placed in the book by Mr. Cabbil.  I had to
take Michael and Eddie to measure this work for the three
days he looked after it on top of the current duties they had
been assigned to.

Tony Cabbil
Friday, August 1, 2003

Mr. Calhoun requested actual mileage driven by each
employee for the years 2002 and 2003.  Upon review, I
found that Tony had almost double what everyone else had.
I will be monitoring this.

December 8, 2003

MEMORANDUM

To: Mrs. Donna Elliott

From: Robert Stringfellow

Subject: Mr. Tony Cabbil

Mr. Cabbil was already working when I took the position of SiteManager Coordinator. He had been through the Inspector training and was working as a SiteManager Inspector by that time. He was not proficient at syncing a Site Pad DWR. I scheduled training for him several times, but for various reasons he didn't show. We met on two occasions for a one-on-one type of training. I gave him a very simple written step-by-step procedure list to follow and made sure he could follow them before we departed.. He still continues to enlist the help of coworkers even after our training sessions. I have told him on several occasions that I will meet with him and work with him as long as it takes to make him proficient. He has yet to request that help.

Please make him aware that the DWR is now a legal document to be used in any legal action, and he must have the ability to use the Site Pad in daily work documents.

To whom it may concern

On Monday August 4, 2003 after everyone cleared out of the office, Tony Cabbil approached me after I had placed my time on the board. He was shouting loudly at me saying "I couldn't wait to see how many hours you would put on the board. I had put 8 hours on the board. I came in at 6:30 AM and worked through lunch since we were placing ashalt that day and I had to leave at 2:30 PM

He, for some reason was shouting at me about if I was a christian he surely didn't want to be one, and how I was stealing and would have to answer to God someday. Every time I would try to say something, he would start shouting loudly and told me not to talk to him like he was a child. So I told him that I would never talk to him again.

He also told me that there were several more things that I did, that he didn't approve of. I have never done anything to Tony and dont know why he would attack me like that. I do know that I feel very threatened by Tony and fear that he may do something else if I am around him.

Thank You

Michael Smelly

EAP-6                          ALABAMA DEPARTMENT OF TRANSPORTATION
Revised 1/00

**SUPERVISORY REFERRAL MEMORANDUM TO EMPLOYEE ASSISTANCE PROGRAM**

December 3, 2003
**DATE**

Employee Referred: Tony Cabbil                    Position: Engineering Assistant

Work Location: Northport, Alabama            Office Phone: 205-339-1799

Referring Supervisor: Donna Elliott            Office Phone: 205-339-1799

Check the reason(s) for referral:

A. Absenteeism and Punctuality

    1. Unexcused absence                      _____
    2. Unreported absence                    _____
    3. Excessive absences                    __X__
    4. Excessive tardiness                   _____
    5. Leaving workplace without authorization  _____

B. Job Performance

    1. Inattention to job                     _____
    2. Failure to perform job properly       _____

C. Communication and Relationship with others

    1. Arguing                           _____
    2. Fighting                          _____
    3. Use of Abusive or threatening language   _____

D. Supervision Responsiveness

    1. Disobedience                     _____
    2. Failure to follow an order         _____
    3. Failure to submit to authority (argumentative)  _____

E. Job Interest and Judgement

    1. Sleeping on job                 _____
    2. Falsification of records          _____
    3. Violation of safety rules        _____
    4. Abuse/misuse of equipment      _____
    5. Participation in unauthorized activity

Page 2
Supervisory Referral Memorandum

   6. Theft/unauthorized possession of departmental property     ——
   7. Possession or use of alcohol, narcotics or dangerous weapon     ——

F.  Other (explain below)     ——

G.  Narrative Comment (if needed)

     Mr. Cabbil recieved his sixth call-in on May 16, 2003.

     Since that time he has received two additional call-ins

     September 29, 2003 and November 20, 2003.


Supervisor's Signature



# ALABAMA DEPARTMENT OF TRANSPORTATION
1409 Coliseum Boulevard, Montgomery, Alabama 36130-3050



Bob Riley
Governor

Joe McInnes
Transportation Director

December 9, 2003

## MEMORANDUM

TO:        Ms. Donna Elliott
           Civil Engineer

FROM:      Jeremiah Taylor, M.S., L.P.C., SAP, CEAP    *J. Taylor*
           EAP Coordinator

RE:        Mr. Tony Cabbil
           Engineering Assistant

Please be advised that the above referenced employee kept
his appointment with the Employee Assistance Program that
was scheduled for December 9, 2003.  In supervising employee,
please continue to document inappropriate work habits and
follow the steps of progressive discipline.

cc:  File

EMPLOYEE:  <u>Tony Cabbil</u>

## EMPLOYEE OCCASIONS RECORD

| DATE OFF | DISAPP. # | APPRO. # | OCCASIONS | COMMENTS |
|----------|-----------|----------|-----------|----------|
| 12-16-02 |  | Call In | 1 | 8 hrs. Sick Leave |
| 1-13-03 |  | Call In | 2 | 8 hrs. Sick Leave |
| 2-19-03 |  | Call In | 3 | 8hrs. Sick Leave |
| 3-17-03 |  | Call In | 4 | 8 hrs. Sick Leave |
| 4-22-03 |  | Call In | 5 | 8hrs. Sick Leave |
| 5-16-3 |  | Call In | 6 | 8hrs. Sick Leave |
| 9-29-03 |  | Call In | 7 | 40 hrs. Sick Leave (Referred to EAP) |
| 11-20-03 |  | Call In | 8 | 7hrs. Sick Leave (Warning) |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |



# ALABAMA
## Department of Transportation

**FIFTH DIVISION, DISTRICT TWO**
**OFFICE OF PROJECT ENGINEER**
4109 McFarland Blvd. N
Northport, Alabama 35476
Telephone: (205) 339-1799
FAX: (205) 339-1405

Bob Riley
GOVERNOR

Joe McInnes
TRANSPORTATION
DIRECTOR

December 8, 2003

# WARNING

**TO:**      Tony Cabbil
          Engineering Assistant

**From:**    Donna Elliott
          Project Engineer

**Re:**      Seventh occasion

**Warning**: Mr. Cabbil is on the seventh occasion in a 12 month  period.

The seventh occasion in a 12 month period states that any further call-in needs a doctor's slip, counseled by supervisor, and the Division Engineer notified.

**Correction:** Mr. Cabbil will be at work with no more call-ins.

**Next Step Taken:**  If Mr. Cabbil continues along this same behavior, the next step that will be taken is a REPRIMAND.

**Definitions:**

**Warning** – a step of discipline that requires that the employee should be told the problem, what to do to correct the problem and what will occur if the problem continues.

**Reprimand** – Is a written document documenting the employee performance concerning work habits or poor work performance, and will be attached to the employee's Employee Performance Appraisal.  In addition, one or more reprimands results in 7 points being deducted in the "Disciplinary Score" section.

Tony Cabbil – Eng. Assist.

Donna Elliott - Project Engineer



# ALABAMA
## Department of Transportation

FIFTH DIVISION, DISTRICT TWO
OFFICE OF DISTRICT ENGINEER
POST OFFICE BOX 70505
TUSCALOOSA, ALABAMA 35407
Telephone: (205) 553-7030
FAX: (205) 556-5933

**DEPARTMENT OF TRANSPORTATION**

BOB RILEY
GOVERNOR

JOE McINNES
TRANSPORTATION
DIRECTOR

January 5, 2004

# REPRIMAND

TO:    Mr. Tony L. Cabbil
       Engineer Assistant

FROM:  Mr. Gary Elliott
       Project Engineer

RE:    Reprimand

Reprimand:  Mr. Cabbil, on December 19, 2003, left the project limits and did not return without notifying the chief inspector (Mr. Ken Edwards-CE) or his supervisor (Mr. Gary Elliott-PE).  Mr. Cabbil actions are violation of the following Employee Work Rules.

General Work Rules:

670-X-19.01(d) – Inattention to job.
670-X-19.01(f) – Leaving job station without permission.

Correction: Mr. Cabbil will, in the future, notify his chief inspector or project engineer before he leaves the office or project site.

Next Step Taken: If Mr. Cabbil continues along this same behavior, the next step that will be taken is suspension.

Definitions:

Reprimand – is a written document documenting the employee performance concerning work habits or poor work performance, and will be attached to the employee's Employee Performance Appraisal.  In addition, one or more reprimands results in 7 points being deducted in the "Disciplinary Score" section.

Suspension – See attachment

## SUSPENSION

The third step of the           ciplinary procedure is suspension.  This is a severe and extremely serious step in the employee's career in state government.  It is important for the employee to realize this fact.  The supervisor must contact the agency personnel office and legal staff regarding the recommendation for suspension. When proceeding with the suspension, the supervisor (and others as dictated by department policy) should  hold a formal meeting with the employee.  The discussion is to outline the continued offenses and desired behavior changes.  The employee should receive due process concerning the meeting.  Due process should involve a notice of intention of the meeting and a meaningful opportunity for the employee to respond.  The employee is to be told the length of suspension and dates of suspension.  The employee should be told the suspension is a time for the employee to consider the criticality of the continued offenses and to decide if he or she would like to continue employment in state government.  The decision should be based upon whether the employee will change the undesirable behavior.  Upon the employee's return, they should be required to give the supervisor an answer as to their decision regarding behavior change and employment with the department.