IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TONY CABBIL, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 2:05-cv-00513-MHT |
| | ) |
| STATE OF ALABAMA DEPARTMENT | ) |
| OF TRANSPORTATION, and | ) |
| JOE MCINNES, | ) |
| | ) |
|    Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S BRIEF IN
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants, the State of Alabama Department of Transportation and Joe McInnes, by and through their undersigned counsel, and, in response to Plaintiff's Opposition to their Motion for Summary Judgment, state as follows:

**FACTS**

In December 2003, Plaintiff Tony Cabbil was "loaned," not transferred, to work under Gary Elliott on the Hugh Thomas Bridge painting project. (Doc. No. 21, Donna Elliott deposition at 75, lines 11-12.)

Gary Elliott first met Plaintiff when he came to work on the bridge project. Mr. Elliott did not know about Plaintiff's work history or how long he had been working for ALDOT. Mr. Elliott just knew that Plaintiff worked out of Donna Elliott's project office. Mr. Elliott did not know about Plaintiff's grievance. (Doc No. 28, Gary Elliott deposition at 13, lines 4 through 14 and 22, and at 15, lines 4-20.)

After the time it was discovered that the he had not properly inspected the bridge shot-blasting and painting, and up to the time of his termination, Plaintiff was allowed to continue to

work, but under closer scrutiny by Ken Edwards. (Gary Elliott affidavit of July 10, 2006 (see Defendants' Supplemental Evidentiary Materials in Support of Motion for Summary Judgment, filed contemporaneously herewith); Doc. No. 28, Gary Elliott deposition at 95, lines 8-18.)

State Transportation Director Joe McInnes reviewed the recommendations made to him by the division office and determined that a pre-termination hearing should be conducted. L. Dee Rowe was designated to conduct this hearing and did so. Plaintiff was apprised of the nature of the charges against him and was given the opportunity to offer evidence in opposition to termination. Ms. Rowe submitted her recommendation to Director McInnes, who, after a review by ALDOT's Personnel Bureau, directed that Plaintiff's employment be terminated (Affidavit of Joe McInnes of July 7, 2006 (see Supplemental Evidentiary Materials).)

After Plaintiff was terminated, Rhonda Davis, a white female, took over the bridge inspection assignment. Rhonda Davis was a new hire within Gary Elliott's project office. Plaintiff has not presented any evidence as to the race of any person who replaced him within Donna Elliott's project office, or that his position in that office was filled. (Doc. No. 28, Gary Elliott deposition, at 26, line 16, through 27, line 16.)

## ARGUMENT

**1. Discrimination under Title VII and Section 1981**

The major thrust of Plaintiff's argument is that Ken Edwards' name appears on several of the Daily Work Reports (DWRs) for the period January 15 through January 27, 2003, and thus he bore equal responsibility for performing the bridge inspections, but was not disciplined in any manner.

While Mr. Edwards' name does appear on the DWRs for January 15, 16, 26 and 27, 2003, all of the inspections reports, save one, were signed by Plaintiff indicating that he had

performed the required inspections. As noted in his affidavit, heretofore filed, Mr. Edwards performed inspections on January 16, 2003, because Plaintiff was not at work that day. Moreover, as explained by Mr. Edwards, that fact that his name appeared on the DWRs is no indication that he performed the inspection work on any of the days in question, except on January 16, 2003. As explained, Mr. Edwards served as Chief Inspector and, as such, was required to divide his time among several ongoing projects. His name and time on the DWRs for January 15, 26 and 27, 2003, merely served to reflect that he had worked those hours that day, although his time was divided among several projects. Mr. Edwards had trained Plaintiff as to the inspection procedures and had turned the responsibility over to Plaintiff. When Plaintiff was present for work, it was his responsibility to climb up into the containment area, to make the proper inspections, and to prepare the DWR for that date. (Gary Elliott affidavit of July 10, 2006; Doc No. 28, Ken Edwards affidavit; Gary Elliott deposition at 34, line 23, 35, line 5, 42, lines 14-16, and 55, lines 21-23; L. Rager deposition at 50, lines10-16.) As indicated by Nicky Calhoun, it was Plaintiff's responsibility to insure that the particular span or section had been properly inspected before designating that it was completed. (Doc. No. 28, Calhoun deposition at 43 line 23, through 44, line 8.)

      Plaintiff cannot rely upon any alleged disparity in treatment between him and Ken Edwards to prove his claims of discrimination under either Title VII or Section 1981. In order to prove either, he must prove that he was treated differently from "similarly situated" persons outside of his protected class. Inasmuch as Ken Edwards is a black man (Doc. No. 28, Gary Elliott deposition at 109, lines 11-12), he is not a proper comparator for Plaintiff's discrimination claim as he is not outside the protected class.

Plaintiff has also named former ALDOT employee Jeremy Akins as a comparator, claiming that Jeremy Akins committed errors in inspections that required a contractor to redo work but was not terminated as was Plaintiff.

In *Burke-Fowler v. Orange County, Florida* 447 F.3 1398 (11th.Cir. 2006), the Court held that, "when we evaluate whether employees are similarly situated, we evaluate 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.' " *Maniccia v. Brown* 171 F.3d. 1364, 1368 (11th.Cir.1999). When making that determination, "[w]e require that the quantity and quality of the comparators' misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."

Defendants argue that Mr. Akins' situation differs markedly from that of Plaintiff Cabbil. Mr. Elliott states that he issued a warning to Mr. Akins for failing, on one occasion, to properly inspect a contractor's compaction work. Mr. Elliott further states that, although he did not have a precise costs for this rework, it would have been far less than the potential cost created by Plaintiff's failure to properly inspect the bridge project during eight days. Further, at the time Mr. Elliott issued the warning to Mr. Akins, Akins had only been counseled once, 19 months before, for a minor incident. (Gary Elliott affidavit of July 10, 2006.) This is in contrast to Plaintiff, who, prior to the termination event, had been reprimanded for leaving the job site without permission and without notifying his supervisors on December 19, 2003, and who had been issued a warning on December 8, 2003, for excessive sick leave call-ins. Employment actions, such as terminations, are not made in a vacuum. An employer is entitled to rely upon factors such as length of service, prior disciplinary histories, or lack thereof, and other work history in making determinations as to the nature and severity of disciplinary action.

There is no dispute that there were deficiencies in the bridge paint work on the specified spans that were not detected by inspections. The question then, as posed by Plaintiff, is why he was punished and Ken Edwards was not. Of the days in question, Plaintiff signed off on eight of nine days indicating that he had inspected the contractor's work. Ken Edwards performed the inspection on one day when Plaintiff was not at work. Ken Edwards was an experienced Chief Inspector/Transportation Technologist. When Plaintiff was questioned by Gary Elliott about the bridge inspections for the January 15-27 time period; he told Mr. Elliott that he had not been up in the containment area in over a week, although, according to Mr. Elliott, proper inspections could not be performed without going up into the containment area. It is reasonable for Mr. Elliott to have concluded that, since he was not currently performing the inspections adequately, Plaintiff had not conducted them properly in January. Nor was it unreasonable for others involved in the termination process to assess this matter in similar fashion.

That the Plaintiff's failure to inspect did not cost the State any money does not minimize the seriousness of the misconduct. The contractor would have been well within his rights to file a claim for this rework when the project was completed; but chose to forego the claim. At the time of Plaintiff's termination, this option was still available to the contractor.

2. **Retaliation claims under Title VII and Section 1981**

In order to prevail on his retaliation claims, Plaintiff must prove that he (1) engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that the adverse action was causally related to the protected expression. *Cooper v. Southern Co*. 390 F.3d 695, 740 (11th Cir.2004). Even assuming *arguendo* that Plaintiff has made a *prima facie* case of retaliation, ALDOT may defeat such by showing that the adverse employment action was supported by legitimate, non-discriminatory reasons. Plaintiff then has the burden of showing

5

that the proffered reasons were mere pretext. *McShane v. U.S. Attorney General* 144 Fed.Appx.779, 205 WL 1799435 (C.A.11 (Fla.)) citing *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d. 1056, 1059 (11th.Cir.1999). In *Galloway v. GA Technology Authority*, 2006 WL 1327808 (C.A.11 (Ga.)), the Court wrote that, "[i]f that burden is met (the articulation of the legitimate, non-discriminatory reasons for the challenged employment action), the plaintiff then bears the ultimate burden of proving, by a preponderance of the evidence, that the reason is a pretext for retaliatory conduct." "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1088 (11th Cir.2004).

Plaintiff's retaliation claims rest upon the DWRs that have been previously discussed and his assertion that Ken Edwards, whom he claims shares responsibility for the deficient inspections, was not terminated or otherwise punished.

Defendants have established legitimate, non-discriminatory reasons for terminating Plaintiff's employment. Plaintiff was trained and assigned to perform bridge inspections but failed to perform these inspections during the time period specified, save one day, January 16, 2003. Although Plaintiff has sought to shift the blame for his failures to Ken Edwards, the DWRs he signed on eight of the nine days involved indicate that he was responsible for the inspections. Plaintiff's subsequent admission to Gary Elliott that he had not been in the containment area in a week on the area currently in progress was a strong indication that he had, likewise, not performed the required inspections during the time frame in question. Further, given that Gary Elliott knew Ken Edwards as a long term employee who was well-trained and proficient, it is was not unreasonable to conclude that it was Plaintiff's failure to properly perform inspections, and not Edwards', which resulted in the contractor having to rework the project.

6

Plaintiff has attempted to isolate his termination solely to the deficiencies in the bridge inspection. This is simply not the case. Though the bridge inspection deficiencies prompted the ultimate termination action; Plaintiff's prior work history, including the previous warning for absences, the reprimand for leaving the job site, and the other negative conduct referenced in his notice of pre-termination hearing was not, nor should it have been, ignored when making the decision to terminate Plaintiff's employment. Taken as a whole, the decision to dismiss this short term employee was not unreasonable.

Ken Edwards and Plaintiff were not co-workers in the sense that they held the same position. Ken Edwards was a Chief Inspector/Transportation Technologist, a position higher than that of Plaintiff, who was an Engineering Assistant. On site, Mr. Edwards was considered to be Plaintiff's supervisor. (Doc No. 28, Gary Elliott deposition, at 28, line 19, through 29, line 10.) As Chief Inspector, Mr. Edwards was responsible for several on-going projects and divided his time among them. Plaintiff had been assigned the responsibility of performing the daily bridge shot-blasting and/or painting inspection work, inspections that required him to climb up into a containment area and physically inspect the work in progress. Except for January 16, 2003, when Plaintiff was not at work, Mr. Edwards did not have that responsibility. If at all--and Defendants do not concede this issue--Ken Edwards' inspection was deficient on one day; the Plaintiff signed DWRs for eight days. Mr. Edwards is not sufficiently similarly situated to constitute a proper comparator for purposes of the retaliation claim.

For reasons stated above, Jeremy Akins is not a proper comparator for purposes of the Plaintiff's retaliation claim.

Although Plaintiff's assignment as bridge inspector was subsequently taken over by a white female, there is no assertion that his position at Donna Elliott's project office, which was his permanent duty post, was filled by a non-minority, or that the position was even filled at all.

Plaintiff's assertion that the bridge rework did not cost the State any money, though true, does not negate the seriousness of the failure to inspect the contractor's work. As indicated, the contractor would have been well within his rights to file a claim for the cost of the rework; fortunately, he decided to forego any such claim.

Defendants contend that the decision to terminate Plaintiff's employment was not pretextual, but rather, was based upon the legitimate, non-discriminatory reasons as expressed above.

RESPECTFULLY SUBMITTED

TROY KING (KIN001)
ATTORNEY GENERAL

s/ Andrew W. Redd
Jim R. Ippolito, Jr. (IPP001)
Assistant Attorney General
Chief Counsel

Andrew W. Redd (RED001)
Robert Prescott (PRE020)
Assistant Attorneys General
Assistant Counsel

**ADDRESS OF COUNSEL:**

State of Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama  36110
Telephone:  (334) 242-6350
Facsimile:  (334) 264-4359
redda@dot.state.al.us

8

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TONY CABBIL, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    No. 2:05-cv-00513-MHT |
| | ) |
| STATE OF ALABAMA DEPARTMENT | ) |
| OF TRANSPORTATION, and | ) |
| JOE MCINNES, | ) |
| | ) |
|    Defendants. | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECT system, which will send notification to the following: Kell Simon, Esq., WIGGINS, CHILDS, QUINN & PANTAZIS, P.C., 301 Nineteenth Street, North, Birmingham, Alabama 35203.

                                                s/ Andrew W. Redd
                                                Andrew W. Redd (RED001)
                                                Assistant Attorney General
                                                Assistant Counsel

**ADDRESS OF COUNSEL:**

State of Alabama Department of Transportation
1409 Coliseum Boulevard
Montgomery, Alabama 36110
Telephone: (334) 242-6350
Facsimile: (334) 264-4359
redda@dot.state.al.us