# FREEDOM COURT REPORTING

### Page 1

1  IN THE UNITED STATES DISTRICT COURT
2  FOR THE MIDDLE DISTRICT OF ALABAMA
3  NORTHERN DIVISION
4
5
6  TONY CABBIL
7      vs.       CASE NO. 2:05-CV-513-T
8  STATE OF ALABAMA DEPARTMENT OF TRANSPORTATION
9
10
11
12      DEPOSITION OF DONNA LEA ELLIOT
13
14  The following deposition in the
15  above-styled case was held on May 10, 2006,
16  beginning at 9:09 a.m., at the offices of
17  Alabama Department of Transportation, located
18  at 2715 Skyland Boulevard, Tuscaloosa, Alabama
19  35401.
20
21
22      REPORTED BY:
23      DAVID S. NORTHINGTON, CCR

### Page 2

1       STIPULATIONS
2
3       It was stipulated and agreed by and
4  between the parties through their respective
5  counsel that the deposition of Donna Lea Elliot
6  may be taken at the date, time and location
7  indicated on the preceding title page.
8       Further, that the signature to and the
9  reading of this deposition by the witness is
10 waived and that this deposition is to have the
11 same force and effect as if full compliance had
12 been had with all laws and rules of court
13 relating to the taking of depositions.
14      Further, that it shall not be
15 necessary for any objections to be made by
16 counsel to any questions, except as to form or
17 leading questions, and that counsel for the
18 parties may make objections and assign grounds
19 at the time of the trial or at the time this
20 deposition is offered into evidence or prior
21 thereto.
22      Further, that notice of filing of this
23 deposition by the Commissioner is waived.

### Page 3

1       APPEARANCES
2
3
4
5  FOR THE PLAINTIFF:
6    MR. KELL SIMON
7    WIGGINS, CHILDS, QUINN & PANTAZIS
8
9
10
11
12 FOR THE DEFENDANT:
13   MR. ANDY REDD
14   ATTORNEY AT LAW
15
16
17
18
19 ALSO PRESENT:
20   MR. TONY CABBIL
21   THE PLAINTIFF
22
23

### Page 4

1       INDEX
2
3
4  TITLE PAGE                    1
5
6  STIPULATIONS                  2
7
8  APPEARANCES                   3
9
10 INDEX                         4
11
12 WITNESS DONNA LEA ELLIOT
13   X BY MR. SIMON         5 - 118
14   X BY MR. REDD        118 - 121
15
16 REPORTER'S CERTIFICATE       122
17
18
19
20
21
22
23

1 (Pages 1 to 4)



**367 VALLEY AVENUE**
**(205) 397-2397  BIRMINGHAM, ALABAMA  1-877-373-3660**

# FREEDOM COURT REPORTING

Page 73

1  Q.  What does that refer to?
2  A.  I would assume using a state vehicle or, you
3      know, state computer, or anything else for your
4      personal use would be prohibited.
5  Q.  Did you have a problem with employees doing
6      that?
7  A.  I don't know. Not that I am aware.
8  Q.  Do you know why Ms. Rowe entered a proposed
9      resolution that says all employees will be
10     reminded about that?
11 A.  I guess just to -- I don't know, you would have
12     to check with her. I don't know. I didn't,
13     you know, write it.
14 Q.  Okay. You said Ms. Rowe counseled you about
15     hand gestures. What did she say about that?
16 A.  I talk with my hands and she said to -- not
17     to.
18 Q.  Okay.
19 A.  To control it.
20 Q.  Okay. Did she specifically talk about pointing
21     to the person that you are speaking to?
22 A.  Yes.
23 Q.  Okay. What did she say about that?

Page 74

1  A.  That just -- you know, just to contain my hand
2      gestures.
3  Q.  Okay. And do you feel like you have done that
4      since the counseling session?
5  A.  Yes, sir.
6  Q.  Were you given any kind of verbal or written
7      discipline as a result of Mr. Cabbil's
8      grievance?
9  A.  Discipline?
10 Q.  Yes.
11 A.  Just, I guess, I would assume, my counseling.
12 Q.  Okay. Is the counseling session documented
13     anywhere to your knowledge?
14 A.  I would assume, I don't know.
15 Q.  Have you looked at your personnel file?
16 A.  No, sir.
17 Q.  So you don't know whether that counseling
18     session is in there?
19 A.  No, I don't know.
20 Q.  You weren't marked down at all on your
21     performance appraisal because of that
22     counseling session, were you?
23 A.  I don't recall.

Page 75

1  Q.  At some point, Mr. Cabbil was transferred from
2      your project to another project, correct?
3  A.  Uh-huh (yes).
4  Q.  Okay. When was that?
5  A.  Well, he was loaned.
6  Q.  To the Chilton County --
7  A.  He was loaned to Chilton County but I don't
8      think -- is that what you're talking about?
9  Q.  I was actually going to ask you about his going
10     to work under your husband.
11 A.  I believe that he was still loaned there, I
12     don't think that he was transferred.
13 Q.  Okay. Does -- So, at that time, Mr. Cabbil was
14     technically still under your supervision?
15 A.  Actually, I don't recall because the payroll
16     was handled by my secretary and I don't know --
17     I can't recall. I don't know technically, on
18     paper, whether he was loaned or just
19     transferred.
20 Q.  Okay. When did that loan or transfer take
21     place?
22 A.  I don't recall the dates.
23 Q.  Okay. Do you recall whether it was in 2003 or

Page 76

1      2004?
2  A.  I don't recall. Yeah, it was towards -- I
3      don't know. I would think the end of 2003.
4  Q.  Okay. It was after Mr. Cabbil filed his
5      grievance, correct?
6  A.  I don't know. I don't know what the time frame
7      was.
8  Q.  Okay. Why was Mr. Cabbil assigned or loaned to
9      Gary Elliot's construction project?
10 A.  We were -- I was asked if I had an employee
11     that would be interested in doing the bridge
12     painting and I asked Tony if he would be
13     interested in it and he said yes, he would.
14     That, you know, it involves heights, would he
15     be afraid of heights, and he said no, he didn't
16     have a problem with it.
17 Q.  Okay. Did you ask any of your other
18     engineering assistants whether they were also
19     interested in working on that bridge painting
20     project?
21 A.  Uh-huh (yes).
22 Q.  So Mr. Cabbil was the first person that you
23     went to?

19 (Pages 73 to 76)