# EXHIBIT A

# AFFIDAVIT OF
# RUSSELL W. ADAMS

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| TONY CABBIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NUMBER: |
| | ) | 2:05-cv-513-T |
| | ) | |
| STATE OF ALABAMA DEPARTMENT | ) | |
| OF TRANSPORTATION; | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF RUSSELL W. ADAMS IN SUPPORT OF ATTORNEY'S FEES

Comes now Russell W. ADAMS, who being first duly sworn, deposes and states as follows:

I have examined the case files and the hourly time records summarized in the itemization of time attached hereto as Exhibit A-1 against the background of the legal standards applicable to award of attorney's fees. The facts and opinions which are contained in the balance of this affidavit are known to me in reference to such standards.

Plaintiffs' counsel has been involved in this case for over a year and a half and has conducted all phases of the plaintiff's case including the following: drafting, editing and filing the complaint; conducting discovery including the depositions of five alleged decision makers and that of a co-worker whose statement was articulated as a reason for the plaintiff's dismissal, defending the deposition of the plaintiff, propounding written discovery and reviewing voluminous documents produced in response to those discovery requests; researching and drafting a response to a Motion for Summary Judgment; drafting the pretrial; attending pretrial conferences; preparing the case for trial including drafting the witness and exhibit lists, voir dire questions, motions in limine;

1

responded to motions in limine and objections to plaintiffs' exhibits; interviewing potential witnesses and rebuttal witnesses for trial; preparing detailed outlines for all potential witnesses on direct and cross examination; researching, drafting and editing jury instructions; making various charts, and conducting legal research.

1.    Reasonableness Of The Hours Expended: The hours and expenses expended on the plaintiff's behalf for which compensation is sought are itemized in Exhibit A-1. The plaintiff's attorneys and paralegals have expended the following hours on the preparation and trial of this case, for which compensation is sought:

| | |
|---|---|
| Russell W. Adams | 152.5 hrs. |
| Kell A. Simon | 148.5 hrs. |
| Temple Trueblood | 111.8 hrs. |
| Susan Donahue | .5 hrs. |
| Paralegals/Clerks | 106.5 hrs. |

Based on my experience in this area of the law in both trial and appellate courts, and my familiarity with the work done in this case, the amount of time was reasonable and necessary for resolution of this issue. The plaintiff's attorneys were careful throughout the preparation for the motion to avoid duplication of time or effort and, prior to the final itemization of time for this case, reviewed all of the hours expended to assure that none of them were unreasonably duplicative.

2    Current Hourly Rates: The current hourly rate for litigation similar to that currently before the Court are the following for each of the attorneys involved:

| | |
|---|---|
| Russell W. Adams | $250.00 |
| Kell A. Simon | $ 225.00 |

2

Temple Trueblood                $175.00

Paralegals/Clerks               $ 95.00

The setting of such hourly rates by the law firm of which I am a shareholder is based upon skill and experience in litigation and appellate practice, the economic forces of competition in the market place, the amount of expense and the financial burden of undertaking the case, the nature and length of the professional relationship with the client, the prospect, amount and potential profitability of future employment by the client, the desirability of litigation and representation of the type involved, the preclusion of other employment due to acceptance of the case, the time limitations typical of the circumstances involved in the case, the amount of time required by the representation and the hourly rate necessary to attract us to accept the offer of employment and to undertake the representation. The applicability of these factors to the current case and the requested hourly rates are discussed in later paragraphs of this Affidavit. The hourly rate charged is commensurate with the prevailing range of rates charged by attorneys in similar circumstances and with comparable skill and responsibility in employment discrimination litigation and similar areas of litigation in the legal community.

I am knowledgeable of the hourly rates charged by most law firms in the City of Montgomery for litigation involving comparable skill, effort, and responsibility in similar circumstances to that currently before the Court. The hourly rate billed in the present case is consistent with the applicable range of such prevailing hourly rates.

The services required and provided in the current case included, in my opinion, the following features: (1) organization and efficiency in the marshaling of facts, evidence and theories of liability so that there were no false starts or wasted efforts and so that discovery provided useful information which was actually used in the preparation and trial of the case; (2) a good comprehension of trial

3

practice and procedure which minimized wasted efforts in preparing and presenting the case; (3) a thorough comprehension of the substantive and procedural law and policy arguments necessary to efficiently present the issues raised in the case; (4) persuasiveness and presentation of the case both before and at the trial of the case; and (5) case assessment which weeds out unproductive theories and claims and concentrates all the energies of the services on the points which are most likely to prevail.  Based on my knowledge of the local market for legal services, these characteristics command the requested hourly rates for comparable work in similar circumstances to that of the current case.

      3.    <u>Contingent Representation Was Necessary:</u>  The plaintiff, as shown at the trial of this case, had very limited financial means.  His income is limited to social security disability. At the time that the representation was undertaken, the plaintiff's attorney knew from past experience in this type of case that out-of-pocket expenses would have to be paid by the attorneys with little or no prospect of reimbursement unless the case was won.  It was also known at that time that such out-of-pocket expenses would typically run between $2,500 and $10,000, for depositions, photocopy expenses, long distance phone calls, paralegal time, and other expenses associated with prosecution of this type of case.  Without an attorney's willingness to accept the plaintiffs' case on a contingent basis, the plaintiff could not have obtained representation in the current case in the local market.

      4.    <u>Representation For Title VII Plaintiffs Has Been Relatively Unavailable In The Local Market .</u>  I am knowledgeable of the conditions in the local market for legal services, including the availability of competent attorneys who are willing to undertake representation of plaintiffs alleging retaliation and  plaintiffs in employment discrimination cases in general.  The availability of attorneys in the local market who are willing to undertake litigation is not the same

for all types of cases. Among all types of representation offered in the local market, attorneys are the least available for plaintiffs in employment discrimination cases brought under Title VII. This is because of the difficulty in the cases and the caps that are placed on the amount of damages recoverable. Representation of plaintiffs in personal injury cases is readily available, and often eagerly sought, by competent attorneys in the local market. Attorneys in the local market vigorously compete to obtain plaintiff clients through a variety of means, including direct advertising and other means of attracting such clients through various indirect marketing tools. Persons injured in ways which fall within the traditional market for legal representation are able to routinely gain such representation because the local market compensates attorneys for undertaking the risk of non-payment and financial loss involved in such representation by paying contingent fees which are far higher than the hourly rate which can be charged for traditional non-contingent representation. Fees earned in personal injury cases, for example, may equate with hourly rates in excess of $600 per hour. In the employment discrimination field, however, even though there is more competition than in the past there is less competition among practitioners in the local market to obtain such cases, especially when they are brought only under Title VII. There are less attorneys in the local market who are willing to undertake representation of plaintiffs in employment discrimination cases only under Title VII. Attorneys in the local market are unwilling to undertake these cases because the verdicts are capped, and fees usually awarded upon prevailing have not been sufficient to compensate for the difficulties and disruption to their practices which typically result from such cases. The fee awards in employment discrimination cases in the local market have not been sufficient to attract competent counsel to undertake representation of plaintiffs in numbers adequate to fulfill the demand for such services.

5.    <u>The Hourly Rate Set By The Market For Other Types Of Representation Does</u>

<u>Not Adequately Compensate For The Services Rendered In A Typical Title VII Case:</u>    The hourly

rates charged in the local market for other types of services are not structured to account for the type

of difficulties and disincentives encountered in this and other Title VII cases. The effect of the

factors set forth in paragraph 4 of the current affidavit and in factors 4, 5, 6, 7, 8, 10, 11 and 12 of

the decision in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 718 (5th Cir. 1974),

necessitate the hourly rates requested. Hourly rates in other types of cases are structured on the

assumption that payment will be received reasonably promptly after billing. Clients who appear to

present a risk of default on non-contingent fee billings are usually required to pay a retainer, make

advanced payments or provide other security to lessen any risk of non-payment. Representation

of plaintiffs cannot be secured by such means. Consequently, the attorney accepting representation

of plaintiffs in Title VII cases is exposed to the risk of default on payment to a greater extent than

the non-contingent attorney who can take steps to minimize such risk and who can curtail his

representation at an early stage before too many hours are expended if default occurs.

6.    <u>Competent Counsel Need Not Accept Title VII Cases To Stay Busy:</u>    Competent

counsel in the local market can obtain sufficient employment to keep them busy without undertaking

representation of plaintiffs in employment discrimination cases. The attorneys in the current case

had to put aside non-contingent representation of corporate and business clients in order to prosecute

the current case. In the absence of the current case, the hours expended by the plaintiff's attorneys

would have been expended on behalf of the foregoing fee-paying clients and others. The risk of loss

of payment of that many hours to a law firm of our size is so significant that it could not be

voluntarily undertaken except on exceedingly rare occasions without payment of enhanced fees

6

which compensate for that risk and attract us to forego the non-contingent representation that is available in the local market.

The competition for the time of competent attorneys in the local market is not merely between contingent and non-contingent representation, but is also between various types of contingent cases. Competent counsel can attract contingent representation in the local market in personal injury and other traditional contingent fee areas of practice which can consume most of their available time. In order to attract competent representation in employment discrimination cases, the fees must be adequate to compete with those available in the more traditional areas of contingent representation, such as personal injury practice.

In short, there are sufficient alternative sources of employment for competent counsel in the local market which compete for the time of such counsel and which will make representation in employment discrimination litigation unavailable to the majority of plaintiffs unless fees in such cases are sufficiently competitive to attract such counsel to undertake the risks and disruptions to their practices that is endemic to Title VII cases. Fees awarded in this District in the past have not attracted sufficient numbers of competent attorneys to undertake employment discrimination cases because they have not been competitive with the fees that are otherwise available for such attorneys in other fields in the local market. Consequently, many victims of employment discrimination have not been able to obtain competent counsel in this District.

7.    The Acceptance Of Representation Of Employment Discrimination Cases Has Serious Repercussions On An Attorney's Practice: The acceptance of representation of plaintiffs in employment discrimination cases has a very negative effect on the financial health of a law firm because the delay in payment of fees in successful cases and the non-payment of fees in unsuccessful

cases is a necessary and inherent part of representation for all firms who accept such cases. The delay in payment has often lasted 5 to 10 years from the time the work was done and routinely lasts two to three years. The simple payment of interest on the award of current non-contingent hourly rates does not compensate for the disruption to the financial health of a law firm which occurs in such representation. In order to attract competent counsel from our firm to undertake such representation, it is necessary that the fees awarded compensate for such disruptions. The same is true for any law firm which is to survive as a business.

8. <u>Additional Aggravating Factors Inherent To Representation Of Title VII Plaintiffs:</u> In addition to the foregoing disincentives to representation of plaintiffs in the employment discrimination field, there are other aggravating circumstances which serve to make such cases undesirable and which directly impact the hourly rates reasonable for such representation. First, such representation often leads to conflicts of interest which prevent the plaintiff's attorney from being able to represent corporate defendants who would provide non-contingent employment on a continuing basis. In the last seven years this has occurred on several occasions involving substantial business that would have otherwise been available to the firm. The law firm which represents plaintiffs must weigh the value of representation of an individual plaintiff in a single lawsuit that is not likely to lead to further representation for that client against the possible loss of repeat business over the course of an entire career from a corporate client. Most, if not all, of the firms in the local market who seek corporate representation refuse to accept contingent representation of plaintiffs because of the conflicts of interest that such cases develop and because of the effect on their reputation in the local market which could cause some corporate clients or potential clients not to choose them as their attorney. This is part of the risk involved in representation of plaintiffs, i.e.,

8

the risk of losing non-contingent clients who could provide continuous employment opportunities for the firm. This is a definite deterrent to the ability to attract competent counsel in the local market. The Wiggins, Childs, Quinn and Pantazis firm has been faced with this conflict in significant matters in the past several years.

Secondly, the requirement that fee requests be reviewed by your opponent and approved by the Court is an extremely undesirable, though necessary, feature of such cases even when successful. This factor, standing alone, is a deterrent to attorney's willingness to handle such cases. The effort at reduction of hours is so routine in some quarters that it appears to be almost inherent to the application of hindsight to the number of hours expended. Regardless of the cause of such reductions, the result is a deterrent to accepting contingent representation in employment discrimination cases.

9.    <u>Novelty and Difficulty</u>: The factual issues which led to a judgment of liability for the plaintiff were difficult and highly risky.

10.    <u>Preclusion of Other Employment</u>: The amount of time expended on this case precluded the acceptance and work on non-contingent work offered to the plaintiff's counsel at various times by other clients. By accepting cases against the State of Alabama and its agencies, plaintiffs' counsel has precluded a significant source of legal employment.

11.    <u>Undesirability Of The Case</u>: Civil rights litigation is viewed as undesirable by most members of the bar. It is undesirable for several reasons which are applicable to this case: (1) the plaintiff almost always lacks the financial resources to vigorously prosecute the action or pay for even routine expenses and attorney's fees; (2) many cases are lost without compensation or reimbursement for even out-of-pocket expenses; (3) considerable time can pass before any attorney's

9

fees are even considered; (4) acceptance of this type of case often leads to an attorney being "typecast" in the role of "civil rights" attorney and leads the community in which he works to repeatedly offer him similar work but to offer less of the more remunerative work in the traditional areas of the general practice of law; (5) many persons in the community have a strong aversion to any person who vigorously prosecutes civil rights cases or who regularly handles such cases; (6) there are often long delays in receipt of fees even after judgment is entered for the plaintiff. The most undesirable part of a civil rights case is the attorney fee phase. The plaintiff's attorney is often required to expose to the critical scrutiny of his adversary and the court every aspect of his work in a particular case. This is highly undesirable to attorneys representing a plaintiff. It requires plaintiff's attorney to call on other attorneys to examine and scrutinize his work.

     12.    The Nature And Length Of The Professional Relationship With The Clients: The length of the relationship with the plaintiff is limited to this one case and is not expected to produce regular future employment by this client or others.

     13.    The Skill Requisite To Perform The Legal Services Properly: The present case required an exertion of effort and skill greater and different than that required in the more routine provision of legal services. Specifically, the case required special familiarity with legal and factual standards unique to cases brought under Title VII, and in particular retaliation claims. Such skills and familiarity are not normally gained through the general practice of law or traditional legal training. The case was sufficiently difficult to win that it required an attorney experienced in litigation of employment discrimination cases involving sex pay claims. Plaintiff's counsel brought to the case specific skills gained through work on other cases brought under Title VII, and other civil rights cases. The judges in the Northern and Middle Districts of Alabama who have been

required to assess this factor have found that the plaintiff's counsel has special skills in litigation of civil rights actions which are not possessed by attorneys who do not regularly practice in this area of the law.

14.   The Experience, Reputation And Ability Of The Attorney:  I was admitted to the Alabama bar in 1990 after graduating *magna cum laude* and Order of the Coif from the University of Alabama School of Law where I was a senior editor of the law review.  I have sixteen (16) years of extensive experience in civil rights litigation and other complex federal court litigation.  I have specialized in employment discrimination cases for the past nine years.  I have practiced before all federal districts in Alabama, the Eleventh Circuit Court of Appeals, and in other district courts around the country.  My practice is almost exclusively devoted to handling plaintiff's civil rights cases, with an emphasis placed on complex cases.  I am asked to speak and I have spoken to legal groups on matters related to employment discrimination.

In 1998, I was approved by Magistrate John Carroll at a rate of $200.00 per hour, and I have regularly billed and been paid at the rate of $250 per hour for the last two years by fee paying clients.  Indeed, the Department of Transportation agreed to pay me the rate of $225.00 per hour over six years ago.  I have particularized knowledge of the practices of the instant defendant which was of particular value and advantage to the plaintiff.

Kell Simon was admitted to practice in 1997 and worked for Wiggins, Childs, Quinn and Pantazis from that time until July of 2006.  During that time, his practice was solely in the area of employment law specializing in complex cases and he also has gained particular knowledge of the Alabama Department of Transportation and its practices through extensive litigation against that agency.  The Department of Transportation agreed to pay Mr. Simon the rate of $215 per hour in 2000.

11

Temple D. Trueblood graduated *magna cum laude* from the University of Alabama School of Law in 2000, where she was also named a Hugo Black Scholar. In her last year of school, Ms. Trueblood was an editor for the Law & Psychology Review and also worked as a law clerk for the Department of Justice in Washington, D.C., doing legal work for the tax division. Ms. Trueblood has also become an Honorary Public Service Commissioner for the State of Alabama. Ms. Trueblood was admitted to the Alabama Bar in September of 2000, and since being admitted, has practiced almost exclusively in the area of labor and employment law, ERISA, and civil rights. Ms. Trueblood has practiced in various Alabama state courts, in all federal districts in the State of Alabama, the Middle District of Tennessee, the Middle District of Georgia, the Northern District of Illinois, and the 11th Circuit Court of Appeals. She has also participated in both collective actions and multi-district litigation of employment claims.

Susan Donahue joined Wiggins, Childs, Quinn and Pantazis in 2003 after obtaining her law degree from the University of Alabama in 2003. Ms. Donahue holds a Phd. in English and was a college professor for eleven years before obtaining her law degree. Since joining the firm, Ms. Donahue has worked on large, complex cases involving race discrimination and FLSA violations as well as cases involving sexual harassment, First Amendment violations and professional ethics.

_____
Russell W. Adams

**STATE OF ALABAMA**          )

**COUNTY OF JEFFERSON**       )

Sworn to and subscribed before me this the 27th day of October, 2006.

_____
NOTARY PUBLIC
My Commission Expires: 8-13-08